THE STATE ex rel. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY v. WILLIAM H. ALLEN et al., Judges of St. Louis Court of Appeals.

Division One, December 30, 1924.

1. **LIFE INSURANCE: Misrepresentations: Fraudulent Impersonation: Cancellation: Suit in Equity.**   After the death of the insured a suit in equity to cancel a life insurance policy is not maintainable.   When an action has been brought, after the insured's death, upon the policy by the beneficiary to recover the amount promised to be paid by it to her upon his death, the insurance company cannot convert the action at law into a suit in equity by alleging fraudulent misrepresentations in the procurement of the policy and praying for its cancellation.   So that where the defendant's cross-bill, filed in the action of the beneficiary to recover the amount of the policy, brought after the insured's death, alleged that the insured had tuberculosis at the time he applied for the insurance and falsely represented that he was healthy and had never been afflicted with such disease, and secured his brother to impersonate him at the medical examination, which showed the insured to be healthy, and thereby fraudulently obtained the policy, and died a few months later from tuberculosis, and asking that the policy be cancelled, the action was not converted into a suit in equity, but the false representations and fraudulent impersonation, if made, were a matter of defense, triable by the jury; and the opinion of the Court of Appeals in so ruling did not contravene, but followed, previous decisions of this court.   [Distinguishing Carter v. Insurance Co., 275 Mo. 84.]

2. ———: **Certiorari to Court of Appeals: Findings of Facts.**   In *certiorari* directed to a court of appeals, on the ground that its opin-

ion conflicts with prior decisions of this court, its findings of fact are not reviewable as upon appeal, but its announcement that the oral evidence on a disputed issue of fact supports the judgment of the circuit court will be accepted as conclusive. So that where the Court of Appeals has said in its opinion that the defense that the insured had tuberculosis at the time the life insurance policy was delivered to him is not sustained by the oral evidence, but the action being one at law the judgment in favor of the beneficiary is supported by sufficient evidence, that finding of the Court of Appeals will be accepted as conclusive upon *certiorari*.

Citations to Headnotes: 1, Courts, 15 C. J. par. 518; 2, Certiorari, 11 C. J. par. 355.

## *Certiorari.*

WRIT QUASHED.

*Leahy, Saunders & Walther* for relator.

(1) The assured according to the uncontradicted documentary evidence in this case, had tuberculosis at the time he applied for insurance. Stephens v. Met. Ins. Co., 190 Mo. App. 673; Burgess v. Pan-American Ins. Co., 230 S. W. 315; Hicks v. Met. Life Ins. Co., 196 Mo. App. 162; Oglesby v. Railroad, 150 Mo. 137; Carter v. Ry. Co., 156 Mo. 635; Guthrie v. Holmes, 272 Mo. 215; Gilmore v. Modern Brotherhood, 186 Mo. App 445; Suah v. Mystic Workers, 196 S. W. 62; McKinally v. Yeomen, 152 N. W. 169; Pampusch v. Nat. Counsel, 176 N. W. 158; Bruck v. Mutual Life Ins. Co., 194 Mo. App. 529; Whiteside v. Court of Honor, 231 S. W. 1026. (2) Proofs of death filed by a beneficiary of a life insurance policy, which show that the assured died of a disease which he had at the time of his application are conclusive unless explained or contradicted, and in the instant case there was no explanation. Stephens v. Met. Life Ins. Co., 190 Mo. App. 673; Castens v. Supreme Lodge, 190 Mo. App. 57; Quentham v. Modern Woodmen, 148 Mo. App. 33; Almond v. Modern Woodmen, 133 Mo. App. 382; Schertz v. Ins. Co., 251 S. W. 93. (3) The good

State ex rel. Life Insurance Co. v. Allen.

or bad faith of the applicant for insurance is immaterial, if, as a matter of fact at the time of the application, and at the time of the delivery of the policy, the assured is actually suffering from a disease which caused or contributed to cause his death.  Burgess v. Pan-American Ins. Co., 230 S. W. 315; Kern v. Legion of Honor, 167 Mo. 467.  (4)  These propositions of law as applied to the undisputed facts of this record established by documentary evidence, set out in the opinion would preclude a recovery in a common law action and *a fortiori* in an equity action.  (5)  This was a proceeding in equity and the Court of Appeals erroneously held that the case should have been tried by the lower court as a common-law case, which holding is in direct conflict with the case of Carter v. Metropolitan Life Ins. Co., 275 Mo. 84, 94, which case has not been overruled by the later case of State ex rel. v. Trimble, 292 Mo. 371, as held by the Court of Appeals, for the reason that the Carter case and the instant case involve exactly the same proposition, namely, a cross bill in equity to cancel a policy after death of the assured secured by fraudulent misrepresentations as to health and by fraudulent impersonation of the insured at the time of the application. (6)  In an appeal in an equity case it is the duty of the appellate court to review the entire record   This the St. Louis Court of Appeals declined to do in this case on the theory this was a common-law case and not an equity suit, and thereby it ignored the controlling effect of the following decisions of this court declaring it to be the duty of the appellate court to review the entire record in the case:  Price v. Morrison, 236 S. W. 302; Derry v. Fielder, 216 Mo. 195; Daudt v. Steiert, 205 S. W. 222; Gibbs v. Haughowont, 207 Mo. 384.

*Wm. McNamee* and *James J. O'Donohoe* for respondents.

(1)  By introducing the policies in evidence and proving the death of insured, plaintiff established a

prima-facie case and cast the burden of pleading and proving an affirmative defense on defendant    Lafferty v. Kansas City Cas. Co., 229 S. W. (Mo.) 750; Peterson v. Railroad, 265 Mo. 480.    (2)   The evidence in the case showed that the insured, at the time he made applications for the policies and when they were delivered, was in a state of insurability.   And defendant has abandoned its so-called defense founded upon substitution. (3)   Admissions contained in proofs of death are not conclusive on the beneficiary.   Holmes v. Protected Home Circle, 199 Mo. App. 528; Remfry v. Ins. Co., 196 S. W. (Mo. App.) 775; Vormehr v. K. O. F. M., 198 Mo. App. 276; Bambergs v. Tribe of Ben Hur, 159 Mo. App. 102. (4)   The testimony of relator's medical examiner is sufficient to repel contrary statements, if any, in the proofs of death.   Keller v. Ins. Co., 198 Mo. 440; Buchholz v. Ins. Co., 177 Mo. App. 683.    (5)   Sec. 6142, R. S. 1919, abolishes warranties.   And the most favorable view that can be taken for relator is that the question whether insured made misrepresentations is one of fact for the court or jury.   Williams v. Ins. Co., 189 Mo. 70; Jenkins v. Ins. Co., 171 Mo. 375; Hicks v. Ins. Co., 196 Mo. App. 162; Bruck v. Ins. Co., 194 Mo. App. 529; Schuler v. Ins. Co., 191 Mo. App. 52; Clarkson v. Ins. Co., 190 Mo. App. 624; Roedel v. Ins. Co., 176 Mo. App. 584; Coscarella v. Ins. Co., 175 Mo. App. 130; Conner v. Association, 171 Mo. App. 364; Lynch v. Ins. Co., 150 Mo. App. 461; Salts v. Ins. Co., 140 Mo. App. 142.    (6)   Relator neither averred nor proved that the alleged misrepresentations made by insured in his application for the policy were "willfully and knowingly made for a fraudulent or corrupt motive."   This is fatal.   Pacific Mut. Life v. Galser, 245 Mo. 377; Beeler v. Supreme Tribe, 106 Neb. 853; Metropolitan Life Ins. Co. v. Larson, 85 Ill. App. 143.    (7)   The medical examiner is the agent of the company for the purpose of ascertaining the insurability of the applicant, and the company is bound by his judgment as to his physical condition.   Modern Woodmen v. Angle, 127 Mo. App. 94; Sternaman v.

Met. L. Ins. Co., 170 N. Y. 13; Masonic Life Assn. v. Robinson, 149 Ky. 80; Fair v. Met. L. I. Co., 5 Ga. App. 708; So. Atl. Life Ins. Co. v. Hurt, 115 Va. 398; Roe v. Life Ins. Assn., 37 Iowa, 696; New York Life v. Moats, 207 Fed. 481; De Lancey v. Ins. Co., 52 N. H. 581. (8) The right to rescind a contract on the ground of fraud must be on discovery of the fraud. Relator elected to treat the policies as valid contracts and held on to the consideration until after action was brought. Wood v. Tel. Co., 223 Mo. 565; Taylor v. Short, 107 Mo. 384; Lierheimer v. Life Ins. Co., 122 Mo. App. 374; Bell v. Ins. Co., 166 Mo. App. 390. (9) The case should have been tried on the law and not on the equity side of the court. State ex rel. v. Trimble, 292 Mo. 383; Schuermann v. Union Central Life, 165 Mo. 641; Mutual Life v. Stevens, 195 N. W. (Minn.) 913. Relator cannot be heard to complain, for the case was tried at its instance in equity instead of at law.

LINDSAY, C.—This is a proceeding upon writ of *certiorari* to the judges of the St. Louis Court of Appeals. The relator seeks to quash the record of the Court of Appeals, which affirmed the judgment of the Circuit Court of the City of St. Louis, in favor of Josie Cradick, as plaintiff, against relator, John Hancock Mutual Life Insurance Company, as defendant. [256 S. W. 501.] Relator contends that the ruling of the Court of Appeals conflicts with certain controlling decisions of this court. The nature of the suit, the proceedings therein, and the facts as found by the Court of Appeals are stated as follows:

"This is an action on two life insurance policies issued to George Cradick. The suit was instituted by Josie Cradick, his wife, who was named as the beneficiary in both policies. The petition is in the usual form, and asks for judgment, in addition to the amount of the policies, for damages and attorney's fees for vexatious refusal to pay.

"The defendant filed an answer and cross-bill, alleging that the party who actually procured the insurance in the name of George Cradick was an impostor, and that misrepresentations had been made in the procurement of the policies, in that deceased was suffering from tuberculosis at the time he secured the policies in question, and that such disease had directly contributed to his death. Defendant also asked for cancellation of the policies.

"The reply was a general denial, and the allegation that the answer was a sham used in an attempt to convert an action at law into a suit in equity. The latter part of the reply was stricken out.

"The court denied plaintiff the right of trial by jury upon the issues joined, and proceeded to hear the same as a suit in equity. The plaintiff introduced the policies, and made proof of the death of deceased, thus establishing her prima-facie case.

"Each of the policies of insurance was for $1000, one dated February 8, 1919, and the other March 5, 1919, and the insured, George Cradick, died on the 2nd or 3rd day of August, 1919.

"Samuel Greenspan, the agent of the defendant at the time the policies were issued, testified that the name of George Cradick was signed to the application for the policies, and was written in his presence; that he heard the deceased answer 'No' to the following questions:

" 'Has applicant ever received treatment for illness in a sanitarium, cure or health resort?

" 'Has applicant or anyone in your family ever had consumption or any disease of the lungs?'

"From this witness's testimony it appears that he had known the insured for about five years prior to the issuance of the policies in question, and during a part of such time he lived directly across the street from him, that there was no doubt but what the man who signed the application was George Cradick. The insured had two industrial policies, which, at the suggestion of wit-

ness, were converted into a life policy; that he never knew the insured to be sick. One of the industrial policies had been issued in the year 1897.

"G. V. R. Mechim, a handwriting expert, testified that the signature of George Cradick on the application for insurance did not appear to be written by the same hand that wrote the name 'George Cradick' on another exhibit.

"Dr. M. J. Dwyer, who was superintendent of the Koch Hospital in 1918, testified, over the objections and exceptions of plaintiff's counsel, that about two years prior to the trial of this case, which occurred on October 6, 1920, George Cradick was at the above-named institution for several months suffering from tuberculosis of the lungs; that he could not say whether his condition at that time was curable or incurable. The witness then identified a postal card with his signature upon it, which was a report made to the health department of the city of St. Louis, showing that George Cradick of 6525 West Park View, aged thirty-four years, was admitted to the Koch Hospital on September 2, 1918, suffering from tuberculosis.

"Dr. W. H. Freudenstein testified that he knew the deceased, George Cradick, during the latter's lifetime, and, over the objections and exceptions of plaintiff's counsel, he was permitted to testify that he was called to see the deceased on July 4, 1919, and found him suffering from what he diagnosed as pleurisy of the right side; that later he was called over the telephone and informed by some member of the police department that Cradick had dropped dead near Grand and Washington avenues; that he was later asked to issue a funeral certificate, and the coroner, through the police department, made such requisition; that at the request of the plaintiff, Mrs. Cradick, he filled out a certificate for the purpose of making proof of death, showing that the insured came to his death from haemoptysis, by which is meant a bleeding without wounds, a spitting up of blood.

"Plaintiff's counsel declined to examine these medical witnesses, on the ground that the testimony was privileged.

"Effie R. Miller, a municipal nurse, identified a report which she had made and filed in the health department, dated June 11, 1918, showing that she visited the home of George Cradick, and made a report from information furnished her by the plaintiff, to the effect that there was a case of consumption at the home of George L. Cradick at 6525 West Park; that the person so afflicted was George L. Cradick, thirty years of age.

"Jennie Kline, another nurse, identified a supplemental report dated August 5, 1919, which she had made of a visit to the home of George L. Cradick, aged thirty-five, at 6316-A Victoria street. The visit was made in response to a report of Dr. Freudenstein that there was a case of consumption at such place.

"Dr. John W. Devereaux, examining physician for the defendant, testified that he examined Thomas Cradick about the last of November, 1918, and saw him once; that he had seen him a few times prior thereto on the streets of St. Louis as a mounted policeman. He described Thomas Cradick as a man about five feet, nine inches tall, and weighing about one hundred forty pounds; that on the 2nd·day òf February, 1919, he examined a person who represented himself to be George Cradick, at 6525 West Park, and that at that time there was a woman there who he supposed was Mrs. Cradick, the plaintiff in this case. This doctor's report was shown him, and he testified that he asked the person representing himself as George Cradick all the questions contained in this report; that the man who represented himself to be George Cradick was of about the same height and weight as Thomas Cradick; that he had the person whom he examined take his shirt off, and he gave him a physical examination of the chest, including the heart and lungs, both by oscillation and percussion, and found the man he examined to be apparently

healthy; that the man representing himself as George Cradick, and the one whom he examined, denied ever having been treated in a hospital; that the man told him, in response to a question as to the last physician he had consulted, that he had gone to Dr. Carruthers for treatment for malaria; that if the person representing himself to him as being George Cradick had been in the hospital from September 21 to December 14, 1918, afflicted with tuberculosis, he could have discovered it by the examination which he made; that the physical examination which he made of this patient would have shown it very readily; that the man examined was a healthy man.

"Plaintiff in rebuttal offered evidence as to the reasonable amount which should be allowed as an attorney's fee in the case; also, the evidence of Thomas Cradick, who was a brother of the deceased, and who testified that he had never ridden a horse in police clothes; that his brother, George, the deceased, was a member of the police force, and rode horses for a number of years. He also testified that he was very familiar with the handwriting of his brother George L. Cradick, and that the signature to the application to the defendant company was the signature of his brother.

"Another witness testified that he was formerly a sergeant of the mounted police, and that Thomas Cradick was never a mounted policeman, but that the deceased, George, was.

"There was other evidence tending to show the genuineness of the signature of the deceased

"The plaintiff then testified that she was present when her husband was examined by a doctor who gave his name as Devereaux; that she did not know that her husband was afflicted with tuberculosis prior to his death; that her signature appeared on defendant's Exhibit No. 7, which was a certificate filled out by her, addressed to the defendant, in which she stated that deceased had never been an inmate of or prescribed for at any hos-

pital, public institution or dispensary, and that at the time she gave such answer she knew her husband had been an inmate at the Koch Hospital; that she had visited him there, but that she did not know what kind of an institution it was at that time, but supposed now it was an institution maintained for tubercular people. She further testified that her husband worked up to the day he died after he came out of the hospital.

"Chester Alexander, in surrebuttal for defendant, testified that he was an insurance claim adjuster; that he visited plaintiff on one occasion for the purpose of obtaining some certificates from her, at which time she denied that she was present when her husband was examined by defendant's physician; and also that she did not know that her husband had been in Koch Hospital.

"Defendant tendered into court the amount of the premiums received on these policies."

The Court of Appeals held that the filing of defendant's cross-bill alleging fraudulent representations by the insured in his application, and a fraudulent impersonation of insured by another person in the medical examination, with a prayer for cancellation of the policies, did not convert the suit into one in equity, and held that the trial court erred in denying to plaintiff the right to trial by a jury. This holding relator asserts is in conflict with the controlling decision of this court in Carter v. Insurance Co., 275 Mo. 84. Dependent upon the foregoing, relator makes the further contention that the Court of Appeals declined to review the evidence as it was bound to do on appeal, the suit being one in equity, and, in that respect, its ruling also contravenes numerous and controlling decisions of this court. Relator urges also, in connection with the foregoing, that error was committed by the Court of Appeals in holding that the testimony of Drs. Dwyer and Devereaux, admitted for defendant over the objection of the plaintiff, was incompetent, and asserts that holding is in contravention of certain decisions of this court.

The foregoing outlines the substantial features of the case, except, however, the fact that it is urged at length and strenuously, in the brief and argument for relator, that according to the uncontradicted documentary evidence, referred to in the opinion, the insured, at the time he applied for the insurance, had tuberculosis, the disease which it was alleged contributed to or caused his death, and knew that he had said disease.

The discussion in the briefs has traveled somewhat beyond the confines of a *certiorari* proceeding. Briefly, the situation is as follows: The trial court conceded defendant's claim that the suit was to be heard as one in equity, denied plaintiff's request for a jury, admitted the testimony to which the plaintiff objected, and found for plaintiff. The Court of Appeals held that the action remained an action of law; considered the documentary and other evidence admitted, both as to relevancy and weight, held incompetent the testimony of the two physicians and the hospital report of Dr. Dwyer, and found that there was evidence sufficient to sustain the judgment as upon an action of law.

I. The first question is upon the ruling of the Court of Appeals that the suit was to be tried as one at law, and not in equity by virtue of the filing of the cross-bill asking for cancellation of the policies. In this supervisory proceeding the question is whether the conclusion pronounced by that court is in conflict with the conclusion of this court in its last and controlling decision, upon the same or similar facts. [State ex rel. Raleigh Inv. Co. v. Allen, 294 Mo. 214; State ex rel. v. Reynolds, 287 Mo. 169.] The question arises here upon the character of the respective cross-bills filed, in this case, and in Carter v. Insurance Co., supra. The statement of the Court of Appeals that the cross-bill in this case alleges "that the party who actually procured the insurance in the name of George Cradick was an impostor," is, we think, not entirely accurate. In this case, as we are authorized to do, we look

*Suit in Equity.*

at the cross-bill as shown in the record. [State ex rel. Seibel v. Trimble, 299 Mo. 164; State ex rel. Western Automobile Ins. Co. v. Trimble, 297 Mo. 1. c. 665.] Both counts of the cross-bill, directed to the two counts of the petition upon the two several policies, state that the application for the policies was made by George Cradick; that the questions in the application were answered by him, and that the policies were issued and delivered to him. Other allegations are that George Cradick, after making the application, fraudulently procured another man to undergo the examination made by defendant's medical examiner, the other man falsely representing himself to be George Cradick, and in that behalf and at the instance and request of George Cradick, making the representations or answers as to health, required in the medical examination. The cross-bill pleaded as essential matters, and at length, misrepresentations made by George Cradick himself in his application as to his existing and past condition of health, particularly as to disease of the lungs of which it was charged he died, and like misrepresentations made by the man who it was alleged George Cradick substituted for himself to be examined, and to answer the questions incidental thereto. The cross-bill, as drawn, brings the alleged misrepresentations of George Cradick, those made by him in person, and those made by his substitute for him in the medical examination, within the terms of Section 6142, Revised Statutes 1919. According to the cross-bill the misrepresentations so made had reference to the disease which it is alleged contributed to or caused the death of George Cradick, a disease of the lungs. These misrepresentations were thus attributable to George Cradick himself, whether they were answers given to questions, or consisted of the physical condition presented by the person put forth for examination. However, the cross-bill in this case does not directly state that the alleged substitute for George Cradick in the medical examination was a person in good health, or apparent good health, but it contains the allegations of misrepresentations, as

stated, as to past and existing condition of the health of George Cradick.

In Carter's case the cross-bill made no reference to misrepresentations as to conditions of health, but was founded upon fraudulent personation of the putative assured, by another person. In Carter's case the defendant did not claim that it had been deceived by Delmar Ridgeway himself. In the first count of the cross-bill defendant, after setting forth certain matters, said: "But defendant states that it was fraudently imposed upon by said *plaintiff and the person who* represented himself to be Delmar Ridgeway and made the application for insurance and took the medical examination." This was charged as done at the instance of the plaintiff. It is not charged against Delmar Ridgeway. In the second count of the cross-bill in Carter's case, the defendant alleged that "a certain person, falsely representing himself to be Delmar Ridgeway, to-wit, the Delmar Ridgeway referred to in plaintiff's petition," made the application. After reciting the issuance and terms of the policy, the defendant said: "That said application was not made in good faith by said *alleged* Delmar Ridgeway for the benefit of the *beneficiary named* in said policy, but was made at the instigation and request of plaintiff, John C. Carter, for his own use and benefit." That is, the pretended Delmar Ridgeway did not make the application for the benefit of the real Delmar Ridgeway, but for the use and benefit of the plaintiff. It was alleged in the first count that plaintiff "caused said alleged Delmar Ridgeway fraudulently to execute a last will and testament, purporting to be the last will and testament of Delmar Ridgeway, the person referred to in plaintiff's petition," devising and bequeathing said policy to plaintiff. In the second count the allegaton was that plaintiff "caused said alleged Delmar Ridgeway to execute a last will and testament whereby he bequeathed said policy of insurance to plaintiff." The allegation was that the policy was not delivered to

306 Mo.—14

Delmar Ridgeway, but that the plaintiff fraudulently obtained possession of it. The distinction between the allegations of the cross-bill in Carter's case, and in this case, is material. In Carter's case the defendant's complaint was that it had been imposed upon by the plaintiff and his confederate, and not by the real Delmar Ridgeway. In the case at bar, the complaint is that defendant was deceived by George Cradick himself. In that case the policy was not issued to the alleged perpetrator of the fraud. He was alive, and was prosecuting the suit. In this case the alleged perpetrator of the fraud obtained the policy, issued to himself, but was dead before the suit was brought.

The Court of Appeals founded its decision upon the ruling of this court, in Schuermann v. Union Central Life Ins. Co., 165 Mo. 641, and in the more recent case of State ex rel. National Council of Knights & Ladies of Security v. Trimble, 292 Mo. 371. In the first mentioned case the suit was at law by the beneficiary, the insured having died. The defense set up was that the policy was issued in reliance upon certain false representations made by the insured, as to the past and present condition of his health, and known by him to be false. There was no claim that another personated the insured in the medical examination. The answer invoked the exercise by the court of its powers as a court of equity, and asked for cancellation of the policy. The trial court held that the case was triable as an action at law, overruled defendant's objection to impaneling a jury, and submitted the issues to the jury. The correctness of that ruling was the issue on appeal. This court considered the question as upon the nature of the issue, and also as affected by the provisions of Section 7890, Revised Statutes 1899, now Section 6142, Revised Statutes 1919. It was said, l. c. 651: "The liability of defendant on the policy in suit, matured by the death of plaintiff's husband, and that liability under the act in question, could only be avoided by showing that some mis-

representation or misrepresentations made by the insured in obtaining same, actually contributed to his death. As said, that is a legal defense strictly, triable by a jury, whether the section in question had so designated it to be tried as such or not.'' Further on it was said: ''Why have the court go through the useless form of having a contract annulled on account of conditions therein or connected with its original issuance, that could never possibly affect the question of defendant's further liability, now that the party insured was dead and the life of the policy had expired.'' And, upon the same line, it was said, at page 652: ''As far as concerns the defendant, its liability to harm on account of the policy in suit terminated in the death of the insured. If the alleged misrepresentations made by him, did not actually contribute to the cause of the insured's death, they could never result in a possible harm to defendant in the future, and for that reason no court should be called upon to do the useless and foolish thing of formally declaring annulled a contract not capable of possible future injury to anyone, whatever the nature or form the proceeding might assume, or the character of the court to which it was addressed.'' In Kern v. Legion of Honor, 167 Mo. 471, the defendant was a fraternal beneficial association organized under the laws of Massachusetts. This court, after discussing the issues made or attempted to be made by the answer and the statutes applicable, held that the defendant's answer failed to conform to the requirements of the statutes, and stated ''no defense under the statutes or in equity.'' In the course of this discussion, it was said, at page 488: ''The statute takes away no material right that was enjoyed prior to its adoption. It is still competent for the company, *during the life of the assured, but not after his death,* to bring a bill in equity to set aside the contract on the ground that it was procured by fraud. [Schuermann v. Ins. Co., 165 Mo. l. c. 652.]'' Reference to the Schuermann case was made in Keller v. Home Life Ins.

Co., 198 Mo. 440, which was an action at law on a policy. The answer pleaded misrepresentations in procuring the policy, as a defense, but did not ask cancellation. The opinion treats the case as one wherein the issues were, under the statute, submissible to a jury.

In State ex rel. v. Trimble, 292 Mo. 371, supra, the defendant in the original suit was a fraternal beneficial association, organized under the laws of Kansas, and authorized to operate in this State. The suit was one at law brought after the death of the insured. The defendant set up in avoidance the making of misrepresentations by the insured in obtaining the policy, but did not tender nor deposit in court the premiums paid. The trial court found for the plaintiff, and the Kansas City Court of Appeals affirmed the judgment. The point most at issue in this court, upon *certiorari,* was, that while the Court of Appeals found that the evidence fully sustained defendant's allegation as to misrepresentations, it further found that defendant had not tendered nor made deposit of the premiums, and in failing to do that could not successfully defend on account of breach of warranties by the assured. Upon that, the prominent, but not the sole, issue made, this court, In Banc, held that the defendant, as a fraternal beneficial association, was relieved from the requirement of tender and deposit of premiums, by the terms of the statute governing such associations, and could make the defense without such tender and deposit. There was, however, another issue, so far pressed by the relator in that case, and so far apparent in the opinion of the Court of Appeals, that this court felt constrained to express an opinion upon that issue also. That question was, what was the character of the suit, wherein, in an action at law after the death of the insured, the defendant sought to be relieved of liability by setting up the making of fraudulent representations in obtaining the policy, and asking cancellation thereof. After reference to a Michigan case, it was said at page 383:

"Whatever may be the rule in the State of Michigan it has been expressly decided in this State that after the death of the insured an action in equity to cancel the policy is not the proper remedy, and that when suit has been brought on the policy the insurance company cannot convert the action into a case in equity by alleging fraudulent misrepresentations in the procurement of the policy and praying for its cancellation. [Schuermann v. Union Central Life Ins. Co., 165 Mo. 641.] Under Section 6937, Revised Statutes 1909, it is provided that no misrepresentation shall be deemed material or render the policy void, unless it contributed to the contingency on which the policy becomes payable, which would be the death of the insured in the case of a life insurance policy, and the question whether such misrepresentation so contributed to such contingency is a jury question. It is not clear from the opinion that the Kansas City Court of Appeals held that in making such defense relator was put into the position of a company seeking to cancel an insurance policy, but relator seems so to regard the opinion. If such is the holding, it is in conflict with the Schuermann case."

The ruling of the Court of Appeals upon the question presented here is not in conflict with the rulings of this court, but is in accordance with these rulings in the cases mentioned, which are consistent, and controlling of this case. These rulings are in harmony with the rulings of the courts of most other states upon the question of the right to invoke the exercise of the powers of a court of equity, under the circumstances shown, after the death of the insured. Illustrative of these is Mutual Life Ins. Co. v. Stevens, 195 N. W. (Minn.) 913, wherein many authorities are cited. Among them mention is made, l. c. 914, of Johnson v. Swanke, 128 Wis. 68, and of the holding in the latter case, the Minnesota court said: "The case is well considered, and many authorities are cited. Its particular value is in the holding that equity jurisdiction has been restricted in this country,

in deference to the constitutional right of trial by jury. As was said in the Omberson case, the law unquestionably is, and we so⟋ hold, that, in the absence of some special circumstances of a nature to cause irreparable loss, an action after a loss under an insurance policy, to cancel the policy for fraud, cannot be maintained.'' The holding of the Federal courts is the same. The question was fully considered in Cable v. United States Life Ins. Co., 191 U. S. 288. [See also Griesa v. Mutual Life Ins. Co., 169 Fed. (C. C. A.) 509.] In the latter case it was said, at page 513:

''It is the settled law of this circuit, and of the Supreme Court, that after the death of assured a suit in equity will not lie for the surrender and cancellation of the policy upon the ground that it was obtained by fraud, for the reason that the company has a plain, speedy, and adequate remedy by interposing the fraud as a defense to an action at law upon the policy.'' What was said upon the subject, in Carter's case, if general force be given to the words used, is out of line with the rulings of this court in its former and in its last ruling upon the question here at issue. What was said in the opinion in that case in holding that the cross-bill converted the plaintiff's action at law into a suit in equity, is to be strictly confined, in its application, to the peculiar facts set up in the cross-bill, the theory of which was, that the plaintiff, not Delmar Ridgeway, obtained the policy payable upon the death of the latter.

II.   The relator urges that the good or bad faith of the appellant for insurance is immaterial, if, as a matter of fact at the time of the delivery of the policy, the assured was actually suffering from a disease which caused or contributed to cause his death, citing Burgess v. Pan-American Ins. Co., 230 S. W. 315. Following that, it is contended that the uncontradicted documentary evidence referred to in the opinion of the Court of Appeals shows conclusively that the assured in this case had tuberculosis at the time he applied for the insurance.

The Court of Appeals in its opinion announced the following finding, not heretofore set out: "The defendant undertook to and did invoke the defense that the deceased was not the party examined by Dr. Devereaux, its examining physician, when the evidence is overwhelming to the effect that Dr. Devereaux examined the insured, and that he was mistaken when he referred to the insured's brother as a mounted policeman instead of the insured." On that point the evidence was not documentary, but oral. Recurring to the finding of the Court of Appeals heretofore set out, concerning the testimony of Dr. Devereaux, the opinion finds that Dr. Devereaux testified "that if the person representing himself to him as being George Cradick had been in the hospital from September 21 to December 14, 1918, afflicted with tuberculosis, he could have discovered it by the examination which he made; that the physical examination which he made of this patient would have shown it readily; that the man he examined was a healthy man." But the sufficiency of the evidence to support the judgment is not here for review as upon an appeal to this court. It was before the Court of Appeals for that purpose, and that court has made its examination and stated its finding. "It is safe to say (all our recent rulings considered) that we will go only to the opinion of the Court of Appeals for the facts in evidence. In other words that we will not review the case as upon appeal here. This rule precludes us from examining the evidence of witnesses to determine *de novo,* as it were, the question whether there was evidence to take the case to the jury. The Court of Appeals found that there was such evidence (stating the facts shown) and we will go no further." [GRAVES, J., in State ex rel. Dunham v. Ellison, 278 Mo l. c. 654.]

The conclusiveness of the documentary evidence referred to in the opinion, which relator urges is uncontradicted, depends upon the accuracy of the information, and accuracy of statement of the person (called as wit-

nesses) making those documents, or statements as to the state of health of the insured, at and prior to the time he made the application.   We cannot go into the testimony of these persons to determine the question of their accuracy or conclusive character.   The Court of Appeals has done that, and after stating the facts shown, has ruled that there was sufficient evidence to support the judgment, the action being one at law.   Also, it is proper to observe here, that the Court of Appeals, after holding that the report made under the supervision of Dr. Dwyer, and his testimony and that of another physician, were incompetent, unless there was a waiver as to these physicians, added the following conclusion:   "But aside from this question plaintiff made a prima-facie case, and the action being one at law, and there being sufficient evidence to support a judgment in her favor, we need not pursue these questions further."   In consideration of what has been shown, we need not go further here.

It follows that the writ herein issued should be quashed.  *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is adopted as the opinion of the court    All concur; *James T. Blair, P. J.,* in the result.