## THE STATE ex rel. LOUIS L. SEIBEL and E. W. LAWSON v. FRANCIS H. TRIMBLE et al., Judges of Kansas City Court of Appeals.

Division One, June 8, 1923.

1. **CERTIORARI: Extra Copies of Abstract.** In a *certiorari* to a court of appeals, no harm is done by the filing, by relators, of extra copies of the abstract of the record used in said court.

2. ————: **Reference to Written Documents.** Upon *certiorari* to a court of appeals written documents referred to in its opinion are to be considered to be within such opinion as fully as if written out therein, and are examined as a part of the opinion, and if not set out in the opinion reference may be made to the abstract filed in said court and re-filed here for an ascertainment of their contents; but this does not authorize relators to proceed in this court as if the original case was here upon appeal. It is only those parts of the opinion in conflict with prior decisions of this court, as set out in the briefs, that are for consideration upon *certiorari*.

3. **CONTRACTOR'S BOND: Overpayment: Consent.** Overpayments to the contractor by the owner, without the consent of the sureties, will release the sureties on the contractor's bond. But where the bond expressly provided that any "overpayment on the part of said obligee to said principal shall not in any way release or affect the liability of said sureties," they did consent, and the Court of Appeals, in holding that an overpayment did not discharge the sureties, followed Evans v. Graden, 125 Mo. l. c. 77, and contravened no other decision of this court.

4. ———: **Erroneous Interpretation: Material Destroyed by Fire.** An erroneous interpretation of the language of a contractor's bond by a court of appeals, if not in conflict with the rulings of this court upon a similar state of facts, or of a state of facts calling for the announcement of the same principle of law or equity, cannot be cured by *certiorari*. Where such court has held that, because of unusual clauses used in the bond, the sureties are liable for material which was destroyed by fire and for that reason did not go into the building, its decision, even if it be wrong, if it conflicts with no prior decision of this court construing the same or similar language, cannot be quashed upon *certiorari*.

5. ———: **Abandonment of Work: Certification of Later Expenses by Owner.** A clause in a bond, requiring the expenses incurred by the owner for furnishing materials, to be audited and certified by the architects, was held by the Court of Appeals to apply to a taking charge by the owner of the work and buildings for reasons other than the deliberate abandonment of the contract by the contractor, and it was further held that the fact that the owner, upon taking charge of the work, after the contractor had deliberately abandoned the contract, did not have his expenses in completing the building certified by the architect, did not discharge the sureties. *Held*, that in so holding the Court of Appeals contravened no previous ruling of this court.

## *Certiorari.*

PRELIMINARY RULE DISCHARGED.

*Goodwin Creason* for relators.

(1) In passing upon a petition for a writ of *certiorari* against an inferior appellate court to determine whether or not the decision is in conflict with a controlling decision of this court, this court will look only to the decision of the respondents to determine the facts, with this important exception, to-wit: That if the decision of respondents refers to documents or written instruments in the case, then this court will examine them to determine whether or not they have been correctly construed by the respondents. State ex rel. v. Reynolds, 226 S. W. 567. (2) When a preliminary writ of *certiorari* against

an inferior court has been issued, then this court, on the hearing to determine whether or not it will order the decision and judgment of the respondents quashed, will consider all matters of conflict whether raised by relator, respondents or by the court's own discovery. State ex rel. v. Ellison, 275 Mo. 228. (3) When the rights of sureties on a bond are involved, the doctrine of *strictissimi juris* may properly be invoked in construing the bond, when it is clear, plain and its meaning unmistakable. The surety is never to be implicated beyond the specified agreement. His obligation shall by no liberal intendment be carried in the smallest degree beyond the undertaking. The measure of his liability is fixed by the terms of the instrument he signs, and cannot be enlarged or varied by judicial construction. His liability is limited to the exact words of the bond. Trust Co. v. Tindle, 272 Mo. 697; Blair v. Perpetual Ins. Co., 10 Mo. 566; State to use v. Boon, 44 Mo. 262; State ex rel. v. Sandusky, 46 Mo. 381; Horne Sav. Bk. v. Traube, 75 Mo. 202; Nofsinger v. Hartnett, 85 Mo. 549; Beers v. Wolf, 116 Mo. 186; Evans v. Gordon, 125 Mo. 77; State ex rel. v. Smith, 173 Mo. 406; Southern R. E. & Finance Co. v. Surety Co., 184 S. W. 1030; Babb v. Theatre Co., 221 S. W. 374. (a) The bond in question limits the liability of the sureties, so far as the contractor's bills are concerned, to such of those unpaid bills as are for labor and materials which went into the construction of the building and were lienable. The trial court and respondents herein erred in holding that plaintiff below should recover against relators as personal sureties on the bond, for the sums paid by the owner after the fire, for unpaid bills of the contractor for materials on the premises, but which were destroyed by the fire before they could be entered into the construction of the building. The owner was not obligated personally to pay these bills, nor was his property subject to a mechanics' lien on account thereof. Authorities above. (b) The stipulation or qualifying clause in the bond did not

change the nature or amount of the obligation one jot or title. It merely provided that the sureties should not be relieved from the aforesaid obligations should certain contingencies arise, which contingencies but for this stipulation would relieve the sureties from all obligations under the bond. (4) It is conceded and the respondents so find in their decision, that the owner did not have his expenditures for finishing the building in question after he took it over for completion, audited and certified by the architects as required by Article V of the contract. This was a breach of the contract by the owner and fatal to his right to any recovery against the sureties, relators herein. Therefore, the respondents' decision, that a demurrer should not be sustained and the decision of the trial court reversed, is in conflict with the following controlling decisions of this court: Beers v. Wolf, 116 Mo. 186; Evans v. Gordon, 125 Mo. 77; Trust Co. v. Tindle, 272 Mo. 667; Taylor v. Jeter, 23 Mo. 244.

*Ball & Ryland* for respondents.

(1) "Abstract No. 2," made up and printed for the Kansas City Court of Appeals in advance of any disposition of the case in that court, is in no particular the abstract required by the rules of this court; and the writ of *certiorari* should be dismissed for failure to comply with those rules. Supreme Court Rules 13 and 33. (2) Even under all authorities relied upon by relators and particularly those mentioned in the petition for the writ, there is in no way a conflict with the opinion of the Court of Appeals. As said in Southern Real Estate & Financial Company v. Bankers Surety Company, 184 S. W. 1030, this contract and bond must be interpreted "as all other contracts are interpreted, in accordance with the reasonable intent of the parties plainly expressed upon their face." The bond in question concludes: "If all such conditions, promises, covenants and agreements are fully and faithfully performed by said principal and the

said obligee held harmless in the premises, then the above written bond and obligation shall be void and of no effect; otherwise to be and remain in full force and virtue.'' (3) The contract between Murphy and Price is nowhere printed in the abstract unless it be in ''Abst. No. 2'' somewhere in the three hundred pages of that document. Even though Article V of that contract should be found and construed, it only applies, and was only intended to apply, where the contractor was put off of the work instead of and as distinguished from abandoning the work, in which latter case it does not apply. Heidlebrink v. Schaffer, 147 Mo. App. 632; Joblin v. Insurance Company, 193 Mo. App. 132.

GRAVES, P. J.—*Certiorari* to Kansas City Court of Appeals. The present proceeding grows out of the case of Arthur E. Price and Edna S. Price, Administrators, (Plaintiffs) Respondents, v. Louis L. Seibel and E. W. Lawson, (Defendants) Appellants, decided by the Kansas City Court of Appeals, and in which the judgment of the Jackson County Circuit Court was affirmed. The relators here (defendants in the court below) were the sureties upon a contractors bond, executed by John R. Murphy, as principal, and these relators as sureties, to P. W. Price, and was given to secure the faithful performance of a builder.'s contract between Murphy and Price. Price sued the sureties, but not the principal in the bond. In the lower court he had judgment for the penalty of the bond ($5,000), to be satisfied upon the payment of $1469.21, the damages found, and the payment of the costs of the action. The general outlines of the case are thus stated by the Court of Appeals:

''This is a suit on a building contractor's bond executed by one John R. Murphy, the contractor, as principal, and Louis L. Seibel and E. W. Lawson, the defendants herein, as sureties. This action is against the sureties only.

''By a contract entered into July 10, 1912, Murphy agreed with P. W. Price to construct an eight-apartment

building at Linwood Boulevard and Wabash Avenue in Kansas City, Missouri, for the sum of $21,150, subject to additions and deductions as provided in the contract. Payments were to be made upon certificates of the architects to the amount of eighty-five per cent of the receipted bills to be presented by the contractor from time to time. It was provided the east half and all of the basement should be ready for occupancy by October 15, 1912, and the entire building completed by December 1st, of the same year. It was agreed that the owner should carry insurance during the progress of the construction to cover all work incorporated in the building and for all materials for the same in and about the premises, payable to the owner and contractor as their interests should appear.

"The defendants herein, as sureties, gave bond to plaintiff in the sum of $5,000 for the faithful performance by the principal of all the terms of the contract and for the payment for all labor and materials used in the construction of the building, so that no liens of any kind would be created. There was also a stipulation in the bond that no alterations in the terms of the contract or waivers by the parties of the provisions thereof, nor any forbearance or overpayment on the part of the obligee to the principal, should operate as a release or affect the liability of the sureties.

"The contractor entered upon the performance of the contract and continued work until January 5, 1913, when, by reason of a fire, the building was damaged in the amount of $6,956.60, which amount was determined by the insurance companies and by a representative selected by the owner and contractor. At the time of the fire, plaintiff had paid the sum of $14,477.65, on warrants signed by the architects, which amount was an excess of $873.78 over the disbursements made by the contractor as shown by the receipts for disbursements. The testimony tends to show that the contractor performed certain extra work amounting to $782, so that his total credit, exclusive of the insurance, was $21,932.

"The insurance policies were taken out during the progress of the work in the name of the owner. The total amount of the insurance was paid to the owner. The insurance was taken out pursuant to the contract, but as it was taken in the name of the owner instead of the owner and contractor, it was not in strict accordance with its terms. Plaintiff and the contractor joined in making proof of loss.

"The testimony tends to show that of the total amount of the insurance, $6,433.01 was allowed by the contractor, Murphy, as damage to the work, and the remainder, $523.59, was allowed as damage to other parts of the building which was the work of other contractors.

"On December 30, 1912, the contractor was served with written notice that unless the building was completed by February 1, 1913, plaintiff would take charge and complete it. This notice was based upon complaint that the contractor was not proceeding with the work with due diligence. The fire intervened, however, and caused the work to cease and the notice was abandoned. Some delay was encountered in securing brick and extra work, and the contractor was entitled to some extension of time, for which proper allowance was made.

"It appears from the evidence that it was tacitly understood by plaintiff and the contractor that work on the building would be suspended until the insurance was adjusted and that the insurance fund would be used to repair the fire damage. When the insurance was adjusted the contractor claimed all of said fund and demanded that he be paid an additional sum of $700, or he would not proceed with the work. Plaintiff refused to comply with this demand, whereupon Murphy abandoned the contract. Plaintiff took charge about February 1, 1913, repaired the damage caused by the fire, and completed the building.

"Further it appears that Murphy made no demand for any of the insurance money other than the whole

sum, and that no tender of any part of the amount was made to him. It required about one month to repair the fire damage and two months more to complete the building. To repair the fire damage plaintiff paid the sum of $4,070.32, and for material to finish the building, on bills previously incurred by Murphy, the sum of $10,025.25, together with the payment previously made to the contractor, making a total of $23,573.22. Among the bills paid was one for mill work, $2,700. The evidence tends to show that about $1,000 worth of this material had been used in the construction of the building prior to the time of the fire; part of the remainder was destroyed by fire, and that not so destroyed was used in the construction after the fire. None of the disbursements in the repair of the fire damage and in the completion of the building was audited or certified by the architects, as provided by the contract.

"The amended petition is formal and charges breach of contract in that the contractor failed to complete the building within the time specified, and the resultant loss of rentals, failure to prosecute the work with due diligence, and abandonment of the contract. Further the amended petition pleads payment of amounts chargeable to the contractor, as set out above. Judgment is prayed in the sum of $5,000 and interest.

"The answer is, first, a general denial, and for further answer admits the execution of the contract and states that the bond charged in the petition was executed; and as special defenses, pleads failure of plaintiff to secure insurance payable to the contractor and owner 'as their interests may appear;' charges collection of the insurance by plaintiff; states contract for extra stone and trench work was made without the consent of defendants, and that by reason thereof the contract was so modified as to release defendants from liability under the bond; that delay in the completion of the building was caused by plaintiff's refusal to allow the contractor to proceed with the finishing work after the plaster was

sufficiently dry; charges wrongful payment of money to Goodjohn Sash & Door Co. for materials delivered on the premises but not used, and other items not lienable which had gone into the building.

"Defendants further allege in their answer that they are liable under their bond only for liens from labor done, or material furnished and used in the construction of the building. The answer also pleads waiver by plaintiff of notice in writing as to delays and securing certificate of architects therefor. Further the answer pleads breach of covenant in the failure of plaintiff to obtain audit and certificate of architects of expenses incurred by plaintiff and damages suffered as provided by Article V of the contract.

"The reply was a general denial. A jury was waived and the cause went to trial to the court. The issues were found in favor of plaintiff and his damages assessed at $1,468.21. Motions for new trial and in arrest were overruled and defendants appeal.

"The court based its judgment upon findings of fact and declarations of law. At this stage of the review it may be well to call attention to the general rule that if there is any substantial evidence to sustain the findings of the court, the judgment will be affirmed. Citations are unnecessary in support of this rule.

"The cause is now before us after having been remanded by this court. The opinion (Price v. Seibel, No. 12,714) was to the effect that plaintiff's evidence did not show a substantial performance of the terms of the contract requiring insurance policies 'to be made payable to the parties as their interests may appear;' that plaintiff made no pretense of proving it, undertaking, instead, to prove that he had done other distinct things with part of the money which Murphy was under obligations to do, such as paying bills for materials and the like; that he asked and the court gave a declaration of law to the effect that if, before the fire occurred, plaintiff had paid over to Murphy more than his receipted

bills for material amounted to, and had paid the accounts
of Murphy for labor and material, then his failure to take
out the insurance as agreed was immaterial; that the
effect of this was to permit plaintiff to recover on a
totally different state of facts from those pleaded; that
if Murphy waived a performance of the contract, then
that should have been pleaded. The judgment was re-
versed and the cause remanded for a new trial.

"The petition was amended to meet the requirement
and the cause was tried under the pleadings based upon
the petition so amended."

The alleged matters of conflict, and the pertinent
facts can best be left to the opinion.

I. The opinion of the Court of Appeals refers to
the pleadings, the contract and bond, and to declara-
tions of law. In this situation the relators have filed
what they call Abstract No. 1 and Abstract No. 2. Some
complaint is made of this, in that it is urged
that it does not meet with our rules. A short
statement clears the situation. Abstract No. 1 contains
the things usually printed in such cases. Abstract No.
2 is the abstract of record used in the Court of Appeals,
and constitutes a part of the return made to this court.
Relators filed ten copies, and designated it as Abstract
No. 2 in this case. This for the reason that the written
instruments mentioned in the court's opinion were to be
found in full in this record. We see no particular harm
in this course. It was useless, because the respondents
had filed (as they were required to file) copies of the
abstract of record and briefs before them. To this ab-
stract, so filed by respondents, we can go, and as sug-
gested, the extra copies furnished by relators do no
harm. There is no substance in the complaint made of
the record now before us.

Abstracts.

II. The ruling just made does not authorize the
relators to proceed in this court as if the original case
was here upon appeal. Where the opinion refers to

written documents, they are considered to
<span></span>Reference to         be within the opinion as fully as if written
Written              out therein. [State ex rel. Kansas City v.
Documents.           Ellison, 220 S. W. 498.] Such written docu-
ments are examined, because they are considered a part
of the opinion under review. In the brief for relators,
we find assignments of error, as if we were hearing the
original case. To these we shall devote no time, in this
a proceeding in *certiorari*. In the application for our
writ it is charged that the opinion of the Court of Ap-
peals conflicts with our rulings in Evans v. Graden, 125
Mo. l. c. 77, and Southern Real Estate Co. v. Bankers'
Surety Co., 184 S. W. l. c. 1033. These and such other
conflicts as may be gathered from the brief will be con-
sidered. Mere alleged error of the Court of Appeals will
not be considered, unless shown to have occasioned con-
flict with our rulings.

III. Evans v. Graden, 125 Mo. l. c. 77, and South-
ern Real Estate Co. v. Bankers' Surety Co., 184 S. W.
l. c. 1033-4, relied upon by relators, rule that over-pay-
ments to the contractor by the owner, without the con-
<span></span>Overpayment.       sent of the sureties, will release the sure-
ties upon the bond. If, however, the surety
consents to over-payments he is not discharged. The
cases also rule that the liability of the surety is not to
be extended beyond the terms of his contract. These
rulings are sound, and the question is whether or not
the Court of Appeals has run counter thereto. It should
be noted that the terms of the bond are not especially set
forth in either of these cases. In the case here we have
the opinion which incorporates (by reference) both the
contract and bond. In the bond we find this language:

"Also that any other forbearance or over-payment
on the part of said obligee to said principal shall not in
any way release or affect the liability of said sureties or
either of them, or their heirs, executors or administrators
from their liability, under the above obligation and bond."

Thus it will be seen that these sureties not only consented to over-payments, but consented in advance, and by the very language of the bond which they signed. In this, the case differs from the two cases cited, supra, which it is alleged are in conflict with the opinion now before us for review. The language of this bond distinguishes the case decided by the Kansas City Court of Appeals from the cases relied upon by relators. In fact upon this point the opinion follows Evans v. Graden, in that, such last case ruled that sureties were liable for over-payments, if they consented thereto. Here we have their written consent in the bond itself. Why sureties would sign a bond of the elasticity possessed by this bond, we cannot conceive, but they have signed it. So as to mere matters of over-payments to the contractor, if any such there were, the opinion does not conflict with the two cases cited. In those cases we were not dealing with a case where the surety had consented, but in them we say that he would be bound, if he did consent.

IV. It is urged that the doctrine of *strictissimi juris* applies to this case, and this may be granted, in as much as the sureties involved do not seem to be engaged in making bonds for a consideration. But this opinion of the Court of Appeals does not controvert such rule.

As we gather it the issue lies within a narrow compass. The partly-constructed house was partially destroyed by fire. The owner had insurance thereon, and the contractor and the owner disagreed as to the full application of the insurance money. The disagreement was over a rather small portion, but it sufficed to cause the contractor to refuse to go further with his contract. The exact figures and the circumstances are detailed in the opinion; a portion covering the point is quoted, supra. In it is the finding that the contractor abandoned the contract.

The real point here made is, that the owner, after taking over the work on the building, paid for some

mill work material which was on the ground, and was destroyed in the fire. The exact quantity burned does not appear. The mill-work stuff as a whole cost over $2700. About $1000 had been used in the building before the fire, some was burned, and the remainder used in the further construction of the building by the owner. From the opinion it may be gathered that the whole sum was paid by the owner, and these bondsmen were made to pay for material (mill-work material) made for the building, and on the ground, but which was burned. The only portion of the opinion dealing with this particular question (if it in fact deals with it) reads:

"Defendant further states the court erred in charging against defendants certain items specified as not having gone into the construction of the building. These items were duly considered by the trial court and allowed, under a proper construction and application of the evidence to the law and the facts as declared by the court, and were found to be proper charges against the contractor and necessary for the completion of the building. We find no error in this respect."

The whole opinion tends to show that this mill-work material, burned on the ground, was considered and entered into the verdict against the sureties. The findings of the circuit court are mentioned in the opinion, and thus incorporated in it for all necessary purposes. The ninth finding reads:

"Among the bills so paid was one of the Goodjohn Sash & Door Company, for certain mill-work furnished the contractor for the building, which had been delivered to the premises, and upon which there was due a balance of $2,700; $1000 of this account was paid January 20, 1913, by the plaintiff upon the written order of the contractor, and $1,700, February 21, 1913, upon the following indorsement of the contractor upon the bill for the said balance showing the several payments: 'The above statement is correct both as to contract price and credits. Signed John R. Murphy.'

"The evidence shows that about $1000 worth of the material had been used in the construction of the building at the time of the fire, and some indefinite amount of the remainder not destroyed was used after the fire. I find that the balance of $1,700 was paid with the implied consent and direction of the contractor and constitutes a proper credit of the plaintiff as against the defendants."

It is to this finding that the court evidently referred in the short quotation made from the opinion above. The bond made the builder's contract and specifications for the building a part of the bond, by express terms. In the bond is this statement:

"Now, therefore, if the said John R. Murphy shall duly perform and observe all the stipulations and agreements contained in the said contract and plans and specifications on their part to be performed and observed and shall pay for all labor and materials used on the construction of said building so that no mechanic's, materialmen's or labor's liens, or liens of any kind, shall ever be created, exist or result against said building so to be constructed, or the site thereof, or the said real estate, on account of any work done or materials furnished and used on the construction thereof, or any labor performed in the premises; it being contemplated that any alterations which may be made or agreements between the said principal and said obligee, or by directors of the architects, in the terms of the said contract and specifications or the nature of the work to be done thereunder, also that the waiving by the said obligee of any of the stipulations therein contained and on the part of said principals to be performed."

Relators emphasize the clause "or materials furnished and used in the construction thereof."

The ruling of the trial court, which is affirmed by the Court of Appeals, is to effect that these sureties were liable for the part of the mill-work material which was furnished, but which was burned in the fire. The ques-

299 Mo.—12.

tions are (1) was the payment for this material within the terms of the contract, and (2) whether or not the ruling to the effect that it was, conflicts with previous rulings of this court. Of this matter next.

V.  The contention of relator is that the judgment *nisi,* and the opinion of the Court of Appeals, makes the sureties pay for material which was not lienable, and could not be lienable, because not used in the building.

Respondents rely upon the latter clause of the quotation from the bond first set out, supra. They claim that the bond covers more than the mere matter of liens, in that it says, "it being contemplated that any alterations which may be made or agreements between the said principal and said obligee, or by directions of the architects, in the terms of the said contract and specifications or the waiving by the said obligee of any stipulations therein contained and on the part of said principals to be performed."

We are at a loss to see just how this portion of the bond changes the situation of the alleged non-lienable material. If the first portion of the bond only bound the sureties to stand good for materials actually used in the building, this latter portion does not change or modify that situation. But this is not for us to decide in the first instance. The sole question for us to decide in the present case is the matter of conflict. It is not for us to say whether or not the Court of Appeals misinterpreted the contract, but we only decide (in this a *certiorari* proceeding) whether or not the construction given conflicts with our rulings upon a similar state of facts, or a state of facts calling for the announcement of the same principles of law or equity. There is one more pertinent fact which should be noted. There was insurance taken out by the owner. The contract called for the insurance to protect both owner and contractor. Just what this insurance covered does not appear. It may, or it may not have covered material on the ground. The trial court found that there was a waiver of any

failure to have the policy in both names, because the contractor joined in making the proof of loss. In addition it appears from the findings of the lower court (approved by the Court of Appeals) that the principal in the bond agreed to the payment by the owner of the mill-work material bill. We state this to the end that we may have in mind all the facts.

We are cited to a long line of cases relating to the liability of sureties on their bonds. They are to the effect, that the surety is not liable unless made so by the terms of his bond. This is true whether or not we invoke what has been termed the rule *strictissimi juris*. The cases cited announce the *strictissimi juris* rule. But the real question here is, whether or not within the terms of this bond, these sureties were liable for material on the ground, but which, by reason of the fire, did not go into the building. We are cited to no ruling of this court upon this question. Without such a ruling from this court, the question of conflict does not exist.

So far as the points made in the briefs are concerned, there is but one left, and that is that the record showed that the owner, after he took charge, did not have his expenses certified to by the architect. Article V of the contract provided:

"The expense incurred by the owner as herein provided, either for furnishing materials or for furnishing the work, and any damage incurred through such default, shall be audited and certified by the architects, whose certificate thereof shall be conclusive upon the parties."

It is upon this portion that relators rely. All of Article V should be read. When so read it will be found that it applies to a case where the owner takes charge of the work and building for reasons other than the deliberate abandonment of the contract by the contractor. In this case the contractor abandoned his contract. He disagreed as to the apportionment of the insurance money, and abandoned his contract. In construing the same clause of a contract, Goode, J., in Heidbrink v. Schaffer, 147 Mo. App. l. c. 640 and 641, said:

"It is clear to our minds Article V did not contemplate renunciation of the contract by the contractor or provide what should be done if he renounced it and abandoned work on the building before it was completed. . . .

"Said provision was written in language which will not bear the meaning that it was applicable when the contractor himself had terminated the employment; for it declared the owner might do this on receipt of a certificate from the architect that the conduct of the contractor had given cause to dismiss him. Besides, if the contractor renounced the contract, there would be no occasion for the certificate of the architect, and the owner could not terminate the employment as it would have been terminated already by the contractor."

The Kansas City Court of Appeals took the same view. We are cited to no case from this court conflicting with these two Courts of Appeals. Our writ should be quashed, to the end that the judgment of the Court of Appeals may stand. It is so ordered. All concur.