STATE OF MISSOURI at the Relation of UNION INDEMNITY COMPANY, a Corporation, Relator, v. HOPKINS B. SHAIN, FRANCIS H. TRIMBLE AND EWING C. BLAND, Judges of the Kansas City Court of Appeals.—66 S. W. (2d) 102.

Division One, December 6, 1933.

*Watson, Ess, Groner, Barnett & Whittaker* for relator.

*Mahan, Mahan & Fuller* for respondents.

FERGUSON, C.—Certiorari seeking to quash the opinion of the Kansas City Court of Appeals in the case of David A. Chernus, doing business as the Chernus Construction Company against L. J. Kennedy and J. B. Coats, doing business as the Kennedy-Coats Construction Company and the Union Indemnity Company, a Corporation, reported in 55 S. W. (2d) at page 744. The action was based upon an indemnity bond executed by the Union Indemnity Company as surety for the Kennedy-Coats Company in the performance of a road construction contract. Trial was had in the Circuit Court of

Cole County. By stipulation a jury was waived and the cause tried to the court; the finding and judgment of the trial court was for plaintiff in the sum of $1796.41 with an attorney's fee of $300 making an aggregate of $2096.41 from which judgment the defendant Union Indemnity Company appealed. The appeal went to the Kansas City Court of Appeals and that court in the opinion which is, by this proceeding, here for review affirmed the judgment of the trial court on condition that plaintiff remit the sum of $300 allowed as attorney's fee. The indemnity company alleging the opinion to be in conflict with prior decisions and rulings of this court then applied for and was granted the writ herein.

We look solely to opinion of the Court of Appeals for the facts and in making a statement thereof and in outlining the case draw upon the opinion by way of numerous quotations therefrom. The plaintiff, Chernus, was awarded a contract for the construction of a section of a State Highway in Caldwell County. He "sublet the grading work" specified in his contract with the State Highway Commission to the Kennedy-Coats Construction Company. To insure "the performance of said subcontract defendant Union Indemnity Company executed a bond . . . in which the Kennedy-Coats Construction Company was principal, the Union Indemnity Company surety and plaintiff the obligee." The defendant indemnity company was engaged in the surety business for compensation and executed the bond for a specified compensation which was paid. The subcontract provided that the Kennedy-Coats Company was to be paid the price fixed by the original contract between Chernus and the State Highway Commission for said grading work less five per cent to be retained by Chernus. The work called for by the subcontract was completed by the Kennedy-Coats Company and accepted by the State Highway Commission, but the Kennedy-Coats Company "failed to pay certain laborers and materialmen and plaintiff instituted this suit." Certain of such claims which plaintiff alleges he, as the original contractor, was compelled to pay are enumerated in the petition with other claims of a like nature which plaintiff alleges he considers lienable and collectible and upon which demand had been made against him. Some of these items were eliminated and the trial court, after making certain findings of fact later referred to, entered judgment for plaintiff in the amount and as aforesaid upon the remaining items. The Kennedy-Coats Company made default. The original contract between Chernus and the State Highway Commission provided that no payments on account of the work would be made by the Highway Commission to the contractor "unless and until the highway engineer" made a monthly estimate in writing of the work performed and "materials in place complete during the preceding month" and "the value thereof at the unit prices contracted" and that "from the amounts so

ascertained." ten per cent should be retained "until after the completion of the entire work and the balance . . . certified to the Commission for payment" and a like provision was incorporated in the subcontract. One defense pleaded by the defendant indemnity company was to the effect that in making payments to the Kennedy-Coats Company during the progress of the work plaintiff failed to conform to the method of payment prescribed and payed said Kennedy-Coats Company "large sums of money in excess of the sums due and owing to said company . . . to the prejudice and damage" of the indemnity company. The trial court made a comprehensive finding of facts and the Court of Appeals held there was substantial evidence to support such finding and the judgment thereon. The trial court found that in the performance of the subcontract the Kennedy-Coats Company failed and refused to pay laborers and materialmen as itemized and set out in the finding and that plaintiff "became legally obligated to pay" and did pay said claims aggregating $3,858.24; that other such claims which plaintiff was "legally obligated to pay" but had not yet paid, which were listed, aggregated $680.97; that the total for which plaintiff was thus liable was $4,539.-21; that plaintiff under the provision of the original contract requiring ten per cent to be retained had duly retained and held "as the balance earned by the Kennedy-Coats Company in the performance of the subcontract, the sum of $2,397.60; and that after deducting said balance from the sum (above stated) which plaintiff was legally obligated to pay "plaintiff has suffered a pecuniary loss by the failure of said Kennedy-Coats to pay said claims in the sum of $2,141.61. The finding of the trial court is set out in the opinion and that part thereof which relates to the defense of alleged anticipated and overpayments made to the Kennedy-Coats Company in the progress of the work, and which are alleged to have been made contrary to the method of payment prescribed by the contract, is found in paragraphs 7, 8, 9, 11 and 12 of such finding as follows:

"7. The Court finds that during the performance of said general contract by the plaintiff and said subcontract by said Kennedy-Coats said Highway Commission, in conformity with said general contract, at monthly intervals caused its engineer to estimate in writing the amount of work performed under said contracts during the preceding month and to certify the same to said Highway Commission for payment; that payments were made to the plaintiff by said Highway Commission in accordance with said written estimates of twenty to twenty-five days after the actual estimates were made by the engineer.

"8. The Court further finds that the plaintiff, at various times during the time the road in question was under construction made payments to the Kennedy-Coats Construction Company prior to the

time of the receipt of the engineer's estimate for the current month; that said construction work progressed continuously to completion; that the engineer's estimate was received from twenty to twenty-five days after the actual estimate was made on the job; that while some of such payments were made previous to the receipt of engineer's estimate, yet in truth and in fact the work had been progressing continuously and at no time did the plaintiff make any payment during the progress of the work in excess of the amount actually earned by the said Kennedy-Coats Construction Company.

"9. The Court further finds that the defendant Indemnity Company was at no time prejudiced or injured by the payments so made as aforesaid, and that the money so paid by the plaintiff was used for necessary labor, material and supplies going into said construction work.

"11. The Court finds that on the final estimate being made for the work done under said subcontract, the said Kennedy-Coats Construction Company was shown to have earned under said contract the sum of $27,427.98, after deducting the 5% due the plaintiff under the terms of said contract; that under the terms of said contract the plaintiff should have retained from the amount due said company an amount equal to 10% of the amount earned as aforesaid; that the amount which should have been retained under the said contract was $2,742.80, whereas in truth and in fact, the plaintiff only retained the sum of $2,397.60; that by such over-payment the defendant Union Indemnity Company was prejudiced to the extent and amount of $345.20, and said defendant should have credit on plaintiff's claim for the amount last aforesaid.

"12. The Court further finds that after allowing the credit of $345.20 last aforesaid, the plaintiff has been damaged in the sum of $1,796.41, together with a reasonable attorney fee, which the court fixes at $300, and that the plaintiff should have judgment for a total sum of $2,096.41, with costs."

Judgment is then entered for plaintiff for the sum of $2,096.41. The finding and judgment of the trial court was in all things approved and affirmed by the Court of Appeals except, as we have heretofore noted, the allowance of an attorney's fee.

Upon the contention of the surety company on appeal concerning the time and manner prescribed by the contract for making payments during the progress of the work the Court of Appeals held that the construction and interpretation of the contract between Chernus and the Kennedy-Coats Company was for the trial court. The opinion of the Court of Appeals sets forth the essential terms of both the primary contract between Chernus and the Highway Commission and the subcontract with the Kennedy-Coats Company

and we have stated them above. The terms of the contracts relative to the time and amounts of payments to be made during the progress of the work are plain and definite and we do not find any basis whatever for the holding of the Court of Appeals that:

"Manifestly it was the duty of the court to construe the contract; and, if the court was correct in its construction thereof, it is our duty to affirm its ruling. Plaintiff contends, and we think properly, that the contract does not provide a definite and specific time for payment; and the original contractor, Chernus, had the right to pay in any amount, and at any time he chose, so long as he did not pay more than the actual value of the work done and material furnished, in addition to retaining 10 per cent of the entire value of the contract. This question arose in the case of Litchgi v. Gottlieb, 134 Mo. App. 237, 113 S. W. 1134, decided by the St. Louis Court of Appeals and by the Supreme Court (Litschgi v. Gottlieb, 247 Mo. 53, 152 S. W. 310), on certiorari. The courts there held that where the contract is silent as to the time when payment should be made, the contractor could not demand payment until the work was completed; but, nevertheless, payment to the contractor by the owner before completion would not release the surety on the bond."

There is no room for construction of the contract and the only province of the court was to determine whether the plaintiff Chernus did comply with the plain terms thereof in making payments to the subcontractor during the progress of the work, and, if he did not, then the effect of such non-compliance on the liability of the surety on the subcontractor's bond. As to this phase of the case and the claim of the surety company that it was released and discharged from all or any, liability by reason of alleged anticipated and over-payments made by Chernus to Kennedy-Coats the Court of Appeals ruled:

"It is admitted plaintiff made certain payments before he received the estimates of the highway engineers; but the testimony is that at no time did he pay more than the value of the work done. There is no charge of overpayment and the testimony supports the finding of the trial court in the construction of the contract. Unless it be shown defendant's rights were prejudiced, the above ruling is conclusive, and there is no such substantial showing here. . . .

"If a contract provide for certain payments at definite times, any variation from that contract in the matter of overpayment must be prejudicial to a surety for hire before that surety is released from its obligation on the bond or contract of indemnity. [Union State Bank, Trustee, v. Am. Surety Co., 324 Mo. 438, 449, 23 S. W. (2d) 1038; State ex rel. Concrete, etc., Co. v. Southern Surety. Co., 221

Mo. App. 67, 81, 294 S. W. 123.] We rule this point against defendant.

"Under point 3, defendant argues the requirement of a written estimate and certification thereof is for the benefit of the surety and constitutes a safeguard against diversion of funds; that both the estimate and certification are conditions precedent to payment. Under the terms of the clause in the contract above quoted, and our construction of it, we hold defendant's position in this respect untenable. The trial court held defendant was not prejudiced, and there is substantial evidence to support the court's ruling thereon. It is the law that a written finding of a trial judge, sitting as a jury, is conclusive when based upon substantial evidence. [Niedt v. Am. Ry. Express Co., 6 S. W. (2d) 973; Haverstick v. Brookshire, 28 S. W. (2d) 432; Albert v. Dolan, 27 S. W. (2d) 438; K. C. Carpet Co. v. Smith, 25 S. W. (2d) 539, 540.] Defendant's citations on this point are found, on examination, not conclusive.

"We have carefully read the long record in this case, and fail to find the trial court erred in holding there is no substantial evidence that the Kennedy-Coats Construction Company was overpaid at any time. Plaintiff's evidence on this point was not substantially refuted.

"It is urged, under point 4 of points and authorities, that the surety in the case at bar, in fact, was prejudiced by the anticipated payments. It is pointed out the evidence shows that each time an anticipated payment was received, Kennedy immediately appropriated either all or a substantial part of such payment and 'transferred the same to his other pocket, the Russell Sales & Service Co.,' and that, by anticipating, Chernus made these diversions possible. The undisputed evidence shows that the Russell Sales & Service Company was an institution owned and controlled by L. J. Kennedy and doing business at St. Joseph, Mo.; that Kennedy, in the name of the Russell Sales & Service Company, advanced money to the Kennedy-Coats Construction Company to be used in the construction work of the latter, on the contract in issue; that when certain payments were made, all or part of such payments were used to reimburse Russell Sales & Service Company. However, the conclusion is not warranted that Kennedy-Coats was overpaid by the anticipated payments, nor may the conclusion be indulged that defendant was prejudiced by these facts."

It is difficult to reconcile certain of respondent's statements and findings of fact made by the trial court. For example the trial court found that Chernus at no time during the progress of the work made any payment in excess of the amount which had been actually earned by the Kennedy-Coats Company (presumably upon the basis fixed by the contract for estimating same) and the opinion says: "It is admitted plaintiff made certain payments before he received the

estimates of the highway engineers; but the testimony is that at no time did he pay more than the value of the work done. There is no charge of overpayment" and also "we . . . fail to find the trial court erred in holding there is no substantial evidence that the Kennedy-Coats Construction Company was overpaid at any time" while the trial court specifically finds, in paragraph 11 of its finding of facts, that Chernus had overpaid in the amount of $345.20 and to that extent the surety company was prejudiced and allowed the defendant surety company a credit in that amount on plaintiff's claim. It must be admitted too that Chernus did not comply with the plain terms of the contract as to the time of making payments and though the Court of Appeals first holds "that the contract did not specify a definite and specific time for payment" the error is not material if the later and further ruling is correct, that "if a contract provides for certain payments at definite times any variation from that contract in the matter of overpayment must be prejudicial to a surety for hire before that surety is released from its obligation on the bond or contract of indemnity." The real question then was whether the nonconformance by Chernus with the terms of the contract in reference to payments had the effect of discharging the surety *in toto* or only *pro tanto*, i. e., to the extent only that the surety is shown to have been damaged or prejudiced thereby. The Court of Appeals in affirming the judgment of the trial court may be considered to have taken the latter view. Relator claims that respondent's opinion in that conclusion conflicts with the following prior decisions of this court: Taylor v. Jeter, 23 Mo. 244; Evans v. Graden, 125 Mo. 72, 28 S. W. 439, and State ex rel. Seibel v. Trimble, 299 Mo. 164, 253 S. W. 215.

In Taylor v. Jeter, the first case cited, Jeter, a building contractor, agreed and contracted with trustees, charged with the construction thereof, to construct a post office building and to furnish all materials and labor and the contract provided that Jeter should be paid specified sums at particular stages in the progress of the work the remainder of the contract price to be paid sixty days after the completion of the building and its acceptance by the trustees. Robinson executed a bond as surety for Jeter conditioned upon the proper and timely performance of the contract by Jeter. The trustees were notified before the completion of the building of the filing of various mechanics' liens for materials nevertheless they advanced and paid Jeter the contract price in full before the completion of the building and did not retain that part of the contract price, or any part thereof, which was to be reserved and held by them until sixty days after the completion and acceptance of the building. The trustees being compelled to pay and discharge the liens established against the building, and of which they had notice, then brought an action on the bond against

Jeter, the principal, and Robinson the surety. Jeter made default. Robinson, who was not a surety for hire, contested and the trial court, a jury being waived, found the issues for defendant Robinson. This court in affirming the judgment said: "The contract duty of this builder was to furnish the materials and do the labor, and he failed in both respects when he allowed the building to be encumbered with these liens. The owner having notice of them, and paying what by the substantial terms of the contract he was entitled to retain until they were removed, voluntarily abandoned an ample fund, which, according to the conditions of the contract, was to accumulate in his own hands as the primary security for its due performance, and in which the surety had an equal interest with himself. He must, therefore, bear the loss occasioned by his own negligence." It will be observed that on the facts there is this difference between the foregoing case and the one here involved. In the instant case the ten per cent which was to be retained until after the completion and acceptance of the work as security for due performance and against unpaid claims was retained, with the exception hereafter noted, and credited by the court upon the claims found by the court to be legal obligations against Chernus. The court did find that, in the final computation, Chernus had overpaid in the sum of $345.20, that is had failed in that amount to retain the full ten per cent reserve fund, and then ruled that having paid out that sum, which he was required to hold as primary security, the surety was thereby, and to that extent, prejudiced and therefore entitled to credit in that amount.

The facts in Evans v. Graden briefly are that, "Col. George S. Park and James Rider & Son entered into a written contract whereby Rider & Son agreed to furnish all the material and erect a building for Park" for a specified amount. The contract provided that Rider & Son were not at any time during the progress of the work to be paid "over seventy per cent of the work done, the whole work to be completed" by October 1st. "Rider & Son gave bond to secure the performance of the contract, with the defendant Graden" as surety. Graden was not a surety for hire. Rider & Son abandoned the work on September 1, leaving the building uncompleted. The total amount paid by Park to Rider & Son and in completing the building after the work thereon was abandoned exceeded the contract price $1408. An action on the bond, seeking recovery in that amount, was brought against the surety Graden. One defense pleaded was to the effect that Park, from time to time, prior to the abandonment of the work had paid Rider & Son more than seventy per cent of the value of the work done. This court said: "The liability of a surety is not to be extended beyond the terms of his contract. He is bound to the extent of his contract, but no further. He is also entitled to the benefit of the securities taken by the creditor from the principal debtor.

These principles of law are applicable to sureties on these bonds given by contractors to secure the performance of their contracts for the erection of buildings. The defendant, as a surety, has a right to stand upon the agreement that Park would not pay Rider & Son during the progress of the work more than seventy per cent of the value of the work done; and if Park, during the progress of the work, paid Rider & Son more than seventy per cent of the value of the work done, without the consent of the sureties, he thereby discharged the defendant. [Taylor v. Jeter, 23 Mo. 244; Ryan v. Morton, 65 Texas, 258; Braggs v. Shain, 49 Cal. 131.] If the defendant surety consented to the overpayments, if any there were, then he is not discharged. These principles of law are set forth in the instruction given, and we see no objection to them.'' The evidence relative to overpayments and the action of Graden in respect thereto is set out and the court further said: ''We think this evidence made a case for the jury on the question whether Park made overpayments, and the question whether defendant gave his consent thereto.'' In the instant case on the issue of overpayments the trial court found, upon substantial evidence that the amount required by the contract to be retained had been held back with the exception noted.

In the last of the decisions of this court above listed, State ex rel. Seibel v. Trimble, concededly a different state of facts exist and the provisions of the bond therein are such that the case does not seem to afford support to relator's position in this proceeding by certiorari.

Respondent's opinion might be deemed in conflict with the ruling of this court and the principles laid down in both Taylor v. Jeter and Evans v. Graden. It will be noted however that in those cases the surety was not a surety for hire. These early cases announce and strictly apply the doctrine that sureties are to be treated as favorites of the law and with what is termed ''the overweening tenderness of the law.'' This doctrine ''had its origin when the courts were called upon to decide the liability of gratuitous sureties on bonds. [Annotations in 12 A. L. R. 382.] However, this so called tenderness for sureties has no place in the law in cases of sureties for hire.'' [State ex rel. Kaercher v. Roth, 330 Mo. 105, 49 S. W. (2d) 109.] The cases now hold that the doctrine that a surety is a favorite of the law and that a claim against him is *strictissimi juris* does not apply where a bond is executed for a consideration by a corporation organized to make such bonds for a profit and that such undertakings should be construed most strongly in favor of the obligee. [Lackland v. American Surety Co., 256 Mo. 133, 165 S. W. 314; M. K. T. Ry. Co. v. American Surety Co., 291 Mo. 92, 236 S. W. 657.] Under later rulings of this court in cases involving suits on bonds of building contractors, the surety being a surety for hire, we have held that a violation of the terms of the contract does not necessarily and *per se*

discharge the surety *in toto* but only *pro tanto,* that is, to the extent only that the surety is damaged or prejudiced by the violation or non-observance of a condition of the contract not vital to the contract itself. Overpayments to the contractor or failure to retain a certain percentage of the contract price until the completion of the work are treated as being in the nature of releasing security taken by the contractor which releases the surety only *pro tanto* and the prejudice or damage done is measured by the value of the security released. [Howard County v. Baker, 119 Mo. 397, 24 S. W. 200.]

The judgment of the circuit court in the instant case and the result reached by respondent's opinion is in accord with these later holdings of this court. The latest pronouncement of this court, which the writer is able to find, upon facts sufficiently similiar to make the ruling a controlling authority, is our decision in Southern Real Estate and Financial Company v. Bankers Surety Company. The decision upon the first appearance of this case in this court is found in 184 S. W. at page 1030. There a full statement of the facts as well as a discussion and determination of controlling principles of law governing a situation very similiar to that in the instant case will be found. The contract provided for the construction of a theater and hotel power plant at an agreed price "and that such sum shall be paid by the owner to the contractor in current funds and only upon certificates of the architect as follows: on or before the 15th day of each month payments shall be made equal in amount to ninety (90) per cent of the value of the work in place during the preceding month according to the certificate of the architect." The contractor entered into a bond to keep the owner of the building harmless and indemnified against claims and liens against the building and to repay the owner all money he might be required to pay to others on account of the failure of the contractor to pay said claims or to complete the building. The defendant surety company, a corporation, engaged in "a general surety business" for hire executed the bond as surety. Construction had been carried on for some time when the contractor abandoned the work. The owner of the building completed the work at a cost of $13,578.03, which was $9,670.57 in excess of the contract price, and then brought an action on the bond against the surety company seeking to recover the said sum of $9,670.57. It appeared that the aggregate of the payments made by the owner to the time the contractor withdrew from and abandoned the work exceeded the amount which the contractor was entitled on the basis for estimating such monthly payments, fixed by the contract, in an amount of approximately $3000. The monthly payments were made upon orders of the architect but these orders or certificates did not contain any statement or estimate of the value of the work in place during the preceding month and apparently were not based thereon. The architect's certificates

are described in the opinion and obviously are not in conformity with the terms of the contract in reference thereto. The trial court held that the architect's certificates "did not constitute such authority for the payment of the sums named in them as was required by the contract and that the payment upon them of more than ninety (90) per cent of the value of the entire work done was such a violation of the rights of the surety as discharged it from the obligation of the bond and gave the defendant judgment." In discussing the question of the liability, of the surety and the extent thereof, under such circumstances, the monthly payments not having been made in conformity with the requirements of the contract resulting in an overpayment of approximately $3000, this court said:

"It has been said from time immemorial that sureties are the favorites of the law, and that their contracts should be construed most strongly in their favor. This rule was sometimes justified upon the ground that their contract is a favor to the parties in the sense that it is founded upon a consideration moving not to themselves, but to the principals in the contract for which they become sponsors. Although, in many cases, this was a violent deduction from the facts, the rule remained that however greatly the surety may have profited, as he did often profit, by the transaction, he might, by the form of his contract alone, place himself in the cherishing arms of the law. When the practice of forming corporations for the purpose of becoming sureties became general, the courts began to harden their rules with reference to the contracts of such agencies, but did not remove their protection from personal sureties nor even inquire whether their reasons for assuming such responsibility were sentimental or pecuniary. They simply relaxed the rule *strictissimi juris* as against these corporations, but did not deny them the aid of the courts in the enforcement of their fair and reasonable contracts, nor refuse to interpret them, as all other contracts are interpreted, in accordance with the reasonable intent of the parties plainly expressed upon their face."

It is then pointed out that the contract confines "the monthly payments to such amounts as would leave a safety margin of ten per cent of the contract price at the end of the work" and that "this necessarily required the estimate to be founded upon the contract price and to state the relative value of the work and material in place to the entire amount of the contract." The insufficiency of the architect's certificates upon which the payments were made is shown in that they failed to comply with the requirements of the contract and "none of them contain any statement of the work in place and only two of them *imply* that an estimate had been made or that value had been considered."

We now come to the holding of this court concerning the rights

of the surety on the contractor's bond and the effect of the overpayments made to the contractor, upon the defective and insufficient certificates, on the surety's liability. The court first observed: "The provisions of the building contract that payments be made only to the extent of ninety per cent of the value of the work and materials in place is evidently for the benefit of the surety who is now called upon to repay to plaintiff about $3000 which has been paid to the contractor and which he admittedly never earned." It is then said that "the only protection" the surety has "lies in the carrying out of the terms of the contract which give him protection. He cannot interfere in the work, but is entitled to the reasonable performance of the duties of the architect, designed for his protection. That this contract requires him to ascertain and certify the entire value of the work and materials in place during each month there can be no doubt. Nor is there any doubt that the careful performance of this duty is the surety's chief protection. While the owner may waive this provision of the contract so far as his own interest is affected by making the payments without a certificate, or upon a defective one, or by not making a timely objection when an objection is called for by the circumstances, it is equally evident that he cannot waive it for the surety. . . . We have already said that this surety is not a favorite of the law so that a stricter rule of performance must be applied in its favor than is applicable to the construction of other contracts. . . . We note that the provision requiring the certificates of the architect is an independent provision, relating only to the evidence upon which it might be found that the payments had become due in the amounts stated, and the loss, if any, occasioned by its non-observance, is capable of computation and compensation in damages." It is then ruled that if under such circumstances the owner overpays the contractor, "every difference growing out of such payment is susceptible of adjustment between the owner and surety . . . and constitutes a defense only to the extent of the amount involved in the overpayment so long as it is made in good faith." The conclusion is that the trial court erred in holding the defendant surety company was discharged from all liability and the judgment is reversed and the cause remanded for trial "in accordance with the principles" therein stated. The case was retried and came here on a second appeal, 276 Mo. 183, 207 S. W. 513. That decision of this court dealt with the correctness of the instructions on the measure of damages and the right of the trial court to grant a new trial when the amount allowed plaintiff by the verdict was inadequate under the uncontradicted evidence. Only that part of the opinion relating to the instructions on the measure of damages is pertinent here. It is said: "We are clearly of the opinion that the court correctly declared the measure of damages in the instruction given by it on behalf of the

plaintiff, namely, that the plaintiff was entitled to recover any amount paid by it for the completed plant, in excess of the contract price, subject to a credit to the defendant for any amount paid the contractor in excess of ninety per cent of the value of the work and material in place in the plant at the time of its abandonment by the contractor.''

Relator also claims the following portion of respondent's opinion contravenes certain prior decisions of this court:

''The second point urged as to the construction of contracts is that they must be given such construction as the parties themselves placed on them, and that inasmuch as the record shows that, at the beginning of the work, plaintiff adhered strictly to payment of the amount of the estimates after the same were certified by the Highway Commission—after deducting the ten per cent and his own five per cent. We rule this fact does not establish the terms of the contract, as contended by defendant.''

Our decisions cited in this connection are: Clayton v. Wells, 324 Mo. 1176, 26 S. W. (2d) 969, and McFarland v. Gillioz, 327 Mo. 690, 37 S. W. (2d) 911. In the Clayton case it is said: ''Where the contract in question is indefinite or ambiguous . . . the interpretation put upon it by the parties themselves, as shown by their conduct thereunder, may be looked to in determining its meaning'' and the ruling in the McFarland case on this point is that the interpretation placed upon certain provisions of the contract by the parties thereto, as shown by their conduct, ''should weigh with the court when a contract is ambiguous.'' It does not appear that the Court of Appeals disagrees with the principle of law announced in these cases or that it has undertaken to declare a rule of law contrary thereto. While the last portion of respondents' opinion set out, supra, rules the point made by relator, as appellant in that court, invoking this rule of construction it does not impugn the rule itself. Apparently the holding is upon the theory that the mere fact that some of the payments made during the progress of the work were made at the times, and in the manner which relator claims was intended by the contract was not sufficient, in view of the fact that other payments were made in a different manner, to establish or show a course of conduct by the parties which could be considered or weighed by the court in construing the contract had the court been called upon to construe the contract but, as we have said, the terms of the contract in reference to payments were plain and unambiguous and construction thereof by the court was not required.

Since, as we have observed, the final result reached by the opinion of the Court of Appeals is not in conflict with, but conforms to, the last controlling decisions of this court upon the decisive questions

involved our writ issued herein should be quashed. It is so ordered. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.