Harry C. Thomas, Appellant, v. Utilities Building Corporation and Kansas City Power & Light Company.—74 S. W. (2d) 578.

Division One, September 18, 1934.*

*Gossett, Ellis, Dietrich & Tyler* for appellant.

---

*NOTE: Opinion filed at May Term, 1934, June 12, 1934; motion for rehearing filed; motion overruled July 17, 1934; motion to transfer to Court en Banc filed; motion overruled at September Term, September 18, 1934.

*Johnson, Lucas, Landon & Graves* for respondents.

HYDE, C.—This case, coming recently to the writer, is an action to determine title to a leasehold estate, for damages for withholding possession, and for the destruction of buildings on the land claimed. Prior to the trial, the parties entered into a stipulation which settled

the issues to be tried and the amount of the damages in case of recovery. Under this stipulation, in case plaintiff established the rights he claimed, he would have been entitled to recover, as follows: "(1) For the conversion of his building by respondents as of March 2, 1929, $15,000.00; (2) and the then present worth on March 2, 1929, of the monthly net value of the rents and profits $450 per month for 24 years and 10 months, amounting to $68,561.82." The court, however, sustained a demurrer to plaintiff's evidence and from the judgment entered against him thereon plaintiff appeals.

The lease in controversy was made in December, 1903, and provided for a twenty-five-year term. The question for determination is: What rights did plaintiff have, as assignee of the Morr Transfer and Storage Company, the original lessee, after the expiration of the twenty-five-year term? The material provisions of the lease are as follows:

"First. That said lessors, being the owners in fee of lots one (1), two (2), three (3) and four (4), in Block lettered F of Second Resurvey of Reid's Addition to the City of Kansas (now Kansas City), in the county of Jackson and state of Missouri, do in consideration of the rents to be paid by and covenants to be performed by said lessee, as hereinafter set forth, lease and let unto said lessee, for the period of twenty-five (25) years from and including the first day of January, 1904, the said lots above described.

"Second. Said lessee, as rent for said premises, during the whole of the first ten years of said term, agrees to pay to said lessors the sum of sixty-five ($65) dollars per month, on the first day of each and every month, in advance, and for the next ten years the sum of seventy-five ($75) dollars per month for each and every month, due and payable in like manner, and for the remaining five years the sum of one hundred ($100) dollars per month for each and every month, due and payable in like manner.

"Third. In addition, as part of the consideration for this lease, the said lessee agrees and binds itself to pay all taxes, state, county and city, that fall due and are payable after the first day of January, 1904, and within the term of this lease, as well as all special taxes and assessments, of every character or kind that may be legally charged or assessed against said property, or any part thereof, after said date. . . .

"Sixth. It is agreed that if all rents have been paid and all the terms of this lease have been complied with, all buildings and improvements on said premises at the expiration of this lease, except the foundation, shall belong to the lessee, with the right to remove the same; but unless said lessee shall have removed them by that time, then they shall be removed within thirty days, but said lessee must pay rent at the rate of one hundred ($100) dollars per month for whatever part of said thirty days said buildings and improvements

and fixtures, or any part thereof so to be removed, may remain on said premises; but should they not be removed within said thirty days, then for whatever time they or any part thereof remain on said premises, said lessee shall pay to the lessors the sum of one hundred and fifty ($150) dollars per month, but if, however, at the end of twenty-five years said possession has not been given, then said lessee shall and will become a tenant of the lessors from month to month."

The assignment of the original lease to plaintiff was made in June, 1922, and in its description of the lease assigned after describing the property which it covered contained the following statement: "Said lease being the only lease entered into by the above named parties covering said premises and *said lease being for the period of 25 years from the first day of January, 1904.*" It also contained the following provisions concerning the consideration of the assignment:

"2. The assignee agrees to pay the assignor herein the sum of $400.00 in advance on the first of each month for and *during the unexpired term of the lease* hereby assigned and to pay the same at the Pioneer Trust Company in Kansas City, Missouri, on the first day of each calendar month after obtaining possession. . . . .

"4. Within 30 days after obtaining possession of said premises the assignee herein agrees to begin placing and erecting improvements on said premises to cost the sum of $7,500.00."

In 1928 the owners, being one of the original lessors and the heirs of the other who was then deceased, made a lease to defendant Utilities Building Corporation for a period of ninety-nine years commencing January 1, 1929, for the purpose of erecting thereon the new Kansas City Power & Light building at a cost of more than one million dollars. The owners notified plaintiff of this lease and notified him to remove the buildings and deliver possession on January 1, 1929. Such notice was served upon plaintiff October 27, 1928, and further notices to vacate were served upon him November 27, 1928, December 31, 1928, and January 30, 1929. This last notice required plaintiff to vacate on March 1, 1929. Plaintiff never at any time commenced to remove any of the buildings from the land but finally, on March 1, 1929, vacated the premises. He, however, gave notice to defendants that in doing so he claimed to be entitled to possession for a period of twenty-five years from and after January 31, 1929; that if defendants took possession he would demand the same from them; that he would hold them liable for any damages done to the buildings; that he was ready to pay $150 per month; and that he was vacating possession only to prevent an unlawful detainer suit against him. Defendants entered the premises on March 2, 1929, and tore down and removed the two brick buildings on the land.

The stipulation between the parties made the following provisions

as to the judgment which should be entered, after the determination by the court of which party was entitled to prevail:

"It is an intention of this stipulation that plaintiff is in final effect hereof foregoing any right he may have or claim to have of recovering judgment for specific possession of said lands he may have or have had because of leasehold right, or rights to possession under the terms and provisions of said lease assigned to him and is to have in lieu thereof, if he was or is entitled to such possession, a money judgment, as aforesaid, against defendants.

"The case shall be tried on this stipulation and other proper evidence which may be introduced by the parties, and if plaintiff recovers, then instead of a judgment for possession of the premises or establishing his title to leasehold or leasehold rights, entitling him to possession on and after March 2, 1929, for twenty-five years, more or less, from, on, or about January 31, 1929, a money judgment shall be entered in his favor for the reasonable value of his such leasehold and leasehold rights and for damages for the destruction and carrying away his building in the value thereof aforesaid as of March 2, 1929.

"If it be found and determined that plaintiff was not entitled to any leasehold or leasehold rights entitling him to have possession of the said lands if and when he should desire or remand same, at his option, at any time on or after March 2, 1929, then the judgment shall be that he take nothing by this suit and pay the costs."

According to plaintiff the rights he claims after January 1, 1929, arise under the sixth paragraph of the lease. His assignments of error raise the question of whether or not the judgment was for the right party. It is plaintiff's contention that this paragraph makes provision for four separate terms, as follows:

"First Term:

"For 25 years from and including January 1, 1904, the rent payable during this period to be $65.00 per month for the first 10 years; $75.00 per month for the next 10 years; and $100.00 per month for the last 5 years of that 25 year period.

"Second Term:

"For 30 days after the end of the first 25 year period if appellant (lessee) chose, as he did, not to remove his building before the end of that 25 years, and, as he also did, if he chose not to remove it within that 30 days. And if and as he retained the land for such 30 days, he became bound, as by the lease it is provided he should be bound 'to pay rent at the rate of $100.00 per month for whatever part of said 30 days,' the buildings might remain on the land.

"Third Term:

"For as long thereafter (that is after the 30 days if he retained possession for the whole of the 30 days) not exceeding 25 years as he might for such 25 years or any part of it he chose retain possession

by keeping his buildings on the land, but he is obligated to pay to the lessors the sum of $150.00 per month (rent) for the 25 years or any such part of the same during which he so retained possession.

"Fourth Term:

" '. . . but, if, however, at the end of 25 years said *possession* has not been given, then said lessee shall and will become a tenant of the lessors from month to month.' "

Plaintiff claims that after the expiration of the thirty-day term he was entitled to another term of "twenty-five years with proviso that *lessee may at any time* during the then current such respective period, *cancel the lease, with or without notice.*" We cannot so construe the lease. It seems to us that plaintiff has discovered twice, as many terms as the lease actually creates. Does not this involved and complicated construction refute itself? If the parties had intended to provide for a second twenty-five-year term, why would they put a thirty-day term between the two and require the removal of the buildings during that intervening period? Is it not reasonable to suppose that, if a renewal for twenty-five years more was intended, it would have provided for the terms and conditions of the original lease to continue instead of giving an option to the lessee under which he would not be bound, as to time, at all? It is the primary rule of construction of contracts that a contract must be construed as a whole, giving effect to every part, if it is fairly and reasonably possible to do so, and to thus determine the true intention of the parties. [Myers v. Union Electric Light & Power Co., 334 Mo. 622, 66 S. W. (2d) 565.]

When this whole instrument is considered, it seems clear that it granted only a lease terminating twenty-five years from the first day of January, 1904, without any provision for extension or renewal. If we give any effect to the provision that the buildings *"shall be removed within thirty days"* after the expiration of the lease, how can we say that it allows them to remain there twenty-five years longer? The lease grants a twenty-five-year term in the first paragraph, provides the rent throughout such term in the second, and provides for the payment of taxes by the lessee which fall due *"within the term of this lease"* in the third. Nothing is said about taxes thereafter or about extension or renewal.

Consideration of the vital sixth paragraph confirms this construction. There is first the provision that, if the lessee has paid all rents and complied with all other provisions, "all buildings and *improvements on said premises at the expiration of this lease* except the foundation *shall belong to the lessee with the right to remove the same."* This clearly contemplates the expiration of the lease, at the end of the twenty-five-year period, with no remaining right in the lessee except to remove the buildings. It grants nothing more. The lease further contemplates that the lessee must remove these buildings during the time for which he has paid rent. In other words, that

the removal shall be on his time instead of on the owners' time. This is undoubtedly the purpose of the next provision which says if they have not been removed before the expiration of this lease "then *they shall be removed within 30 days but said lessee must pay* rent at the rate of $100 per month *for whatever part of said 30 days said buildings* and improvements and fixtures *or any part thereof* so to be removed *may remain* on said premises." Clearly, this means what it says, that the buildings *shall be removed* within thirty days after expiration of the twenty-five-year period, but that the lessee must pay, for the time he withholds possession of the ground for the purpose of removing the buildings, at the same rate which he had been paying during all the latter part of his lease. Therefore, the lessee had the option of waiting until after his lease expired before commencing to remove the buildings, but, if he wanted to remove them at all, he was required to at least commence to do so within the thirty-day period. That explains the next provisions "but shall they not be removed within said 30 days, then for whatever time they or any part thereof remain on said premises said lessee shall pay to the lessors the sum of $150 per month." Undoubtedly this was only intended to provide for contingencies which would prevent the completion of the removal of the buildings, *commenced within the thirty-day period*, such as strikes, unusually severe winter weather such as sometimes occurs in this climate in the month of January, or other unpreventable emergencies. Considering this clause in the light of the paragraph as a whole, we cannot construe it, as plaintiff contends, as giving the lessee an option to nullify the previous provision that the buildings *shall be removed*, and not remove them at all, but instead to leave them there as long as he pleased up to twenty-five years more, but without binding him to pay rent for any definite time whatever, and leaving it to him to move them off and quit the premises without notice at any time he might choose, with or without reason, whether one month, one year or twenty-five years. It is not reasonable to think that any owner of valuable real estate would intend to tie up his property in this manner. The final clause providing that the lessee shall become a tenant from month to month if he had not given possession "at the end of twenty-five years" clearly refers to the end of the twenty-five-year period from January 1, 1904, which the lease granted and which is the only twenty-five-year period mentioned anywhere in the document.

If *rearranged to better state its true meaning*, this paragraph would read as follows:

"Sixth. It is agreed that if all rents have been paid and all the terms of this lease have been complied with, all buildings and improvements on said premises *at the expiration of this lease*, except the foundation, shall belong to the lessee, with the right to remove the same; but if, however, at the end of twenty-five years (which

means 'at the expiration of this lease') said possession has not been given, then said lessee shall and will become a tenant of the lessors from month to-month; but unless said lessee shall have removed them (buildings and improvements) by that time, then *they shall be removed within thirty days,* but said lessee must pay rent at the rate of one hundred ($100) dollars per month for whatever part of said thirty days said buildings and improvements and fixtures, or any part thereof so to be removed, may remain on said premises; but should they not be (completely) removed within said thirty days (removal having been commenced within that time), then for whatever time they or any part thereof remain on said premises, said lessee shall pay to the lessors the sum of one hundred and fifty ($150) dollars per month.'' (Italics and parenthetical insertions ours.)

It would seem that the original lessees and plaintiff so construed the lease at the time the assignment was made, since they merely described it therein as being for a period of twenty-five years and since it only required the assignee to pay rent during the unexpired term of the lease. During the time they had held this lease that part of Baltimore Avenue was being transformed from a livery stable street into a skyscraper canyon. The resulting effect upon real estate values was far greater than anyone could have foreseen when the lease was made. Certainly, in assigning a lease, which had become so valuable that the assignors were able to get a profit of $300 per month or more for its remaining seven years, and which, according to the stipulation between the parties, was at the time it expired worth $700 per month more than the amount fixed, according to plaintiff's claim, as rent during a second twenty-five-year period, if the parties had construed the lease as giving them another twenty-five-year term, they would have given some recognition to such a valuable right. It is not conceivable that they would have regarded it so lightly as to give it away without mentioning it. Nor is there evidence that the original lessees have since January 1, 1929, made any claim for further monthly payments from plaintiff on the theory that they sold him a second twenty-five-year term. The interpretation put upon a contract by the parties themselves, as shown by their conduct in regard to it, is always persuasive in determining its true meaning. [State ex rel. Union Indemnity Co. v. Shain, 334 Mo. 153, 66 S. W. (2d) 102, and cases cited.]

Plaintiff further contends that since the stipulation between the parties (in the portion above set out) provides that plaintiff is entitled to damages, for the destruction of his building, if he was entitled to possession on and after March 2, 1929, he is entitled to recover its agreed value, $15,000, and also the value of his right to occupy it, even though he was only a tenant from month to month. Plaintiff argues that, if defendants are correct in their contention

that the lease did not provide for another twenty-five-year period, still he did not become a tenant from month to month until the end of the thirty-day period after the lease expired, that is, he did not become a tenant from month to month until January 31, 1929. Plaintiff says, if that be true, defendants were not entitled to possession on March 2, 1929, because they could not terminate his month to month tenancy by a notice served before it began. In other words, that the tenancy from month to month could only be terminated by a notice served after plaintiff had been in possession for one month as a tenant from month to month. Plaintiff's brief contains many authorities on this proposition. However, they are not applicable here. Paragraph six plainly provides, as we construe it, that plaintiff should become a tenant from month to month at the expiration of the lease. He, therefore, became a tenant from month to month on January 1, 1929, and the notice served upon him January 30, 1929, to vacate March 1, 1929, was sufficient to terminate his month to month tenancy on that date. [Sec. 2584, R. S. 1929.] The fact that the thirty days provided, in which he should remove his buildings was less than the number of days in the month of January, did not prevent his becoming a tenant from month to month on the first day of January. The time might just as well have been fixed as the first twenty days or twenty-five days of the month as at thirty days. We hold that the lease did not create an intervening term of thirty days before the tenancy from month to month commenced, but merely provided the time during the first month, of the month to month tenancy, in which the lessee should at least attempt to remove the buildings. Since the stipulation provides that, if plaintiff was not entitled to any rights which gave him the right of possession "on or after March 2, 1929, then the judgment shall be that he take nothing by this suit," we must hold the judgment of the trial court to be correct.

The judgment is affirmed. *Ferguson* and *Sturgis, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.