In re Billy Joe HUFFMAN, Debtor.

Mary PHILLIPS, Plaintiff,

v.

Billy Joe HUFFMAN, Defendant.

Bankruptcy No. 93–20762–C–13.

United States Bankruptcy Court,
W.D. Missouri.

Sept. 1, 1994.

John A. Ruth, Newman, Comley & Ruth, Jefferson City, MO, for plaintiff.

Jeff Spainhower, Jefferson City, MO, for defendant.

Rick Fink, Chapter 13 Trustee.

ORDER GRANTING PLAINTIFF'S MO-
TION FOR SUMMARY JUDGMENT
AND GRANTING PLAINTIFF'S MO-
TION TO LIFT THE AUTOMATIC
STAY THAT IS INCORPORATED IN
THE MOTION FOR SUMMARY
JUDGMENT

FRANK W. KOGER, Chief Judge.

This matter is before the court on Mary Phillips' motion for summary judgment made pursuant to Fed.R.Bankr.P. 7056 and Fed. R.Civ.P. 56. Mary requests that this Court enter summary judgment in her favor on her Objection to Confirmation of Debtor's Plan and Complaint in which she incorporates a motion to lift the automatic stay to allow her to prosecute a rent and possession action and unlawful detainer action pending in state court, and enter summary judgment in her favor on Billy Joe Huffman's counterclaim. Huffman did not respond to Mary's motion.

## FINDINGS OF FACT

Mary Phillips owns certain real estate located at 714 Michigan Street and 718 Michigan Street in Jefferson City, Missouri, which she owned as a tenancy by the entirety with her husband, Victor Phillips, until his death on June 16, 1994. On August 21, 1981, Mary and Victor leased to Billy Joe Huffman pursuant to a written agreement the property at 714 Michigan Street on a month-to-month basis for $800 per month. Huffman remodeled the property and started a physical fitness, weight lifting and Karate business at that location.

On December 1, 1983, Mary and Victor leased to Huffman pursuant to a written contract the real estate at both 714 Michigan Street and 718 Michigan Street on a month-to-month basis for $1000 and $1200 per month, respectively. The property at 718 Michigan Street had previously housed a roller skating rink. The December 1983 lease included specific provisions for renovations, changes and improvements to be made to the property, and provided that Huffman could use the premises only for a gym. Huffman remodeled the premises at 718 Michigan Street to adapt the building for his ongoing physical fitness, weight lifting and Karate business.

At the end of December 1984, Huffman vacated the premises at 714 Michigan Street, but continued to occupy 718 Michigan Street and operate his business. Huffman currently operates the Jefferson City Athletic Club at that location.

The August 1981 lease for the real estate at 714 Michigan Street provided that improvements to the premises which were attached to the building or altered the property were not to be removed by Huffman without the Phillips' approval. The December 1983 lease for both 714 Michigan Street and 718 Michigan Street states: "At the termination of the Lease, all improvements made to the premises by the Lessees shall become the property of the Lessors, including any additional plumbing fixtures, air conditioning and heating fixtures, partitions or other improvements." Huffman "[b]asically remodel[ed] the whole place" at 714 Michigan Street by improving the bathrooms and putting in pan-eling, insulation, showers, a sauna and a hot tub. When Huffman vacated the premises at 714 Michigan Street, the improvements remained.

In a letter dated August 29, 1993, Mary gave Huffman a notice of eviction effective September 1, 1993, terminating the month-to-month lease at 718 Michigan Street for "past due rents." The letter informed Huffman that he must vacate the premises, pay all past due rent and the rent for September, and turn over the keys by September 30, 1993. The notice of eviction was delivered by certified mail on August 30, 1993. Huffman received this notice, but did not vacate the premises by September 30, 1993. Huffman owes past due rent to Mary through September 30, 1993, in the amount of $4050.

On October 6, 1993, Mary filed an unlawful detainer action and a lawsuit for rent and possession in state court. Huffman filed a Chapter 13 petition for bankruptcy on October 18, 1993, which stayed the state court actions under 11 U.S.C. § 362.

Huffman did not make rental payments for October or November 1993. Huffman's rental payments were $1800 per month.

Mary filed a motion to lift the automatic stay to allow her to proceed with her state court unlawful detainer and rent and possession actions. Mary argued that under Missouri law the month-to-month tenancy had terminated prior to October 18, 1993, and that Huffman's lease had expired and could not be assumed under 11 U.S.C. § 365. In an order filed December 9, 1993, the Court denied the motion, without prejudice to any further motions, and ordered that Huffman make protection payments in the amount of $1800 per month beginning December 1, 1993. At the time of the hearing, the Court observed that the case needed to proceed further to know where matters stood.

In his confirmation plan, Huffman proposes to assume the lease, pay $1800 per month for rent, and cure an unpaid rent arrearage of $4080 by paying $155 per month with interest at nine percent per annum over a 55 month period. In the plan summary, Huffman listed Mary and Victor Phillips as se-

cured creditors of collateral valued at $60,000.

On January 3, 1994, Mary filed an Objection to Confirmation of Debtor's Plan and Complaint. Mary contends, in relevant part, that under Missouri law the oral month-to-month lease with Huffman had terminated prior to Huffman's bankruptcy and Huffman cannot assume the expired lease. Mary renews her request to lift the automatic stay to allow her to proceed with her state court actions. Mary claims the total arrearage for unpaid rent is $7650, and not $4080 as Huffman set forth in his plan. Mary further asserts that she is merely an unsecured creditor, is not a secured creditor and has no security interest in $60,000 worth of collateral.

Huffman filed an answer to the objection to confirmation and complaint and filed a counterclaim in which he asserts that Victor and Mary agreed to a lease purchase arrangement for the real estate at 718 Michigan Street, that with this assurance he occupied the premises and began construction to modify the facility to suit his business purpose, that upon his inquiry the Phillips continued to promise him a lease purchase contract, that with the continuing assurance of a written contract he continued to improve the facility, and that he has invested a total of $60,000 in leasehold improvements to the property. Huffman seeks a judgment against Mary in the amount of $60,000.

Mary replied to Huffman's counterclaim and denies that Huffman invested $60,000 in leasehold improvements to the premises at 718 Michigan Street with Victor's or her knowledge and consent, denies that Victor or she ever agreed to offer Huffman a written lease with an option to purchase that property, asserts that in the absence of a contrary agreement the title to the improvements vested in her pursuant to Missouri law, and argues that any alleged oral contract for the sale of the property at 718 Michigan Street falls within the Missouri Statute of Frauds and cannot be enforced.

In his deposition taken on June 21, 1994, Huffman admitted that there is no written contract for the lease purchase of the property at 718 Michigan Street, that there is no

writing of any kind that recognizes his right to have a lease with an option to purchase the property at 718 Michigan Street, there was no purchase price established for this property, there was no agreement regarding how the purchase price would be paid or the amount of a down payment when the option was exercised, there was no agreement as to whether any of the rent payments would be applied to the purchase price, there was no time period established regarding the length of the lease portion of the agreement, and there was no agreement regarding the period of time in which Huffman could exercise the option to purchase the property. Huffman further admitted that during the time that he leased the real estate at 714 Michigan Street and 718 Michigan Street, the Phillips paid the taxes and maintained insurance on the structures. Huffman stated that he never assumed or agreed to assume any mortgage on the property at 718 Michigan Street.

On July 15, 1994, Mary filed this motion for summary judgment. In her motion, Mary seeks summary judgment on the following issues: (1) there is no executory contract for Huffman to assume, therefore, this Court must find her objection to confirmation valid on the basis that Huffman is attempting to assume a terminated lease and must lift the automatic stay to allow her to proceed with her state court actions; (2) the arrearage figure in the confirmation plan should be $7650; and (3) Huffman's counterclaim for $60,000 fails as a matter of law in the face of the Statute of Frauds, Statute of Limitations, lack of essential elements required for an enforceable agreement, and because she owns the improvements Huffman made to the leased property. Huffman did not respond to the motion. The Court will address each issue in turn.

## DISCUSSION

■ Summary judgment is proper whenever there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; Fed.R.Bankr.P. 7056. The evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Froholm v. Cox,* 934 F.2d

959, 961 (8th Cir.1991). Even though Huffman failed to respond to Mary's motion for summary judgment, the Court must still address the merits of the motion and Mary has to meet her burden of proof. *See In re Henry,* 110 B.R. 608, 609 (Bankr.N.D.Ga. 1990).

### A. Whether the objection to confirmation is valid and whether this Court must lift the automatic stay on the basis that the lease for the property at 718 Michigan Street had terminated prior to the date on which Huffman filed his bankruptcy petition?

■ Mary argues that the notice of termination received by Huffman operated to terminate the lease pursuant to Missouri law on September 30, 1993, prior to the date on which Huffman filed his bankruptcy petition; Huffman cannot assume the expired lease under 11 U.S.C. § 365; and, therefore, the Court must grant summary judgment in her favor on her objection to confirmation on the ground that Huffman is attempting to assume a terminated lease, and the Court must lift the automatic stay to allow her to proceed with her two state court actions.

A chapter 13 plan must comply with all provisions of chapter 13 and it must also comport with all other applicable provisions of the Bankruptcy Code, including chapters 1, 3 and 5, in order to meet the standard for confirmation under 11 U.S.C. § 1325(a)(1). 5 Lawrence P. King, ed., Collier on Bankruptcy, ¶ 1325.02[2] (1994).

11 U.S.C. § 365 provides in relevant part:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

. . . .

(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

. . . .

(3) such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief.

■ Before a debtor may exercise the power in 11 U.S.C. § 365(a), it must be established that an executory contract or unexpired lease existed at the time of the filing of the bankruptcy petition. *In re Kong,* 162 B.R. 86, 91 (Bankr.E.D.N.Y.1993). " 'If the contract or lease has expired by its own terms or has been terminated prior to the commencement of the bankruptcy case, then there is nothing left for the [Debtor] to assume or [reject].' " *Id.* (quoting *Collier,* ¶ 365.02, at 365–16 & 365.04, at 365–37; *Miller v. Romberger (In re Romberger),* 150 B.R. 125, 126–27 (Bankr.M.D.Pa.1992)). "[I]f a lease cannot be assumed under § 365, sufficient cause exists to lift a stay of state court proceedings involving that lease." *In re Escondido West Travelodge,* 52 B.R. 376, 378 (Bankr.S.D.Cal.1985). If the lease has not been terminated, the stay must remain in force. *Id.*

■ "Whether or not a lease has terminated prior to bankruptcy is a question of state law." *In re Kong,* 162 B.R. at 91. *See In re Escondido West Travelodge,* 52 B.R. at 378. " 'The point of termination is often difficult to ascertain, especially when eviction proceedings have been commenced, but not completed, prior to bankruptcy.' " *In re Escondido West Travelodge,* 52 B.R. at 378 (quoting B. Weintraub & A. Resnick, Bankruptcy Law Manual § 7.10[1] ).

The parties herein had a month-to-month rental agreement. Mary asserts that the agreement was oral, however, this point is unclear. There is no evidence that shows the parties abandoned the December 1, 1983, lease in favor of an oral agreement. The rental payment for the property at 718 Michigan Street did increase from $1200 per month to $1800 per month. Whether the lease was oral or written is not a material fact in this case. Mary certainly does not advance any arguments to the Court based upon any breach by Huffman of any terms of the last written agreement between the parties. Nor does Mary base her termination argument upon any lease term. The Court

does note that the December 1, 1983, lease provides:

(e) That if any default shall be made in the payment of rent, and if said rent remains unpaid for thirty (30) days from the date it is due as set forth in this agreement, or if, after ten (10) days' written notice setting forth the default, the default shall continue by the Lessees in the performance of any covenant, agreement or condition contained in this Lease, the Lessors shall have the right to re-enter and take possession thereof upon written demand and all rights and interests of the Lessees shall cease and terminate.

Mary bases her argument on Mo.Rev.Stat. § 441.060(1) (1986), which states: "A tenancy at will or by sufferance, or for less than one year, may be terminated by the person entitled to the possession by giving one month's notice, in writing, to the person in possession, requiring him to remove." Mary argues that the notice of eviction received by Huffman operated to terminate the month-to-month lease effective September 30, 1993, a date which was prior to the filing of the bankruptcy petition.

■ In *Watkins v. Wattle*, 558 S.W.2d 705, 709–10 (Mo.App.1977), the Missouri Court of Appeals noted three ways that a lease may be terminated: (1) the acceptance by the landlord of a surrender by the tenant; (2) the afflux of time constituting the lease term; and (3) enforcement by the landlord of a forfeiture. In Missouri, a month-to-month tenancy can be terminated by the proper statutory notice. *Kansas City Stock Yards Co. v. A. Reich & Sons, Inc.*, 250 S.W.2d 692, 699 (Mo.1952). The Supreme Court of Missouri in *Thomas v. Utilities Bldg. Corp.*, 335 Mo. 900, 74 S.W.2d 578, 582 (1934), found that at the expiration of a twenty-five-year nonresidential lease a month-to-month tenancy was created, and concluded that a notice served upon the tenant on January 30, 1929, to vacate the premises by March 1, 1929, was sufficient to terminate the month-to-month tenancy on that date.

The Court has found a Missouri Court of Appeals case, *State v. Probst*, 556 S.W.2d 61 (Mo.App.1977), in which the Court of Appeals reaches a different, but distinguishable, conclusion from that reached by the *Thomas* court. In *State v. Probst*, Probst orally leased a house on a month-to-month basis. Probst failed to pay rent, and after making several unsuccessful demands for past-due rent, the landlord brought an action in the magistrate court for possession and past-due rent. Judgment was rendered on March 10, 1975, and Probst vacated the premises on March 16, 1975, after which the landlord discovered damage to the property. Probst was charged and convicted of the criminal offense of injuring a house. He appealed contending that as a tenant he had an interest in the property and could not be convicted as charged.

The Missouri court agreed with Probst that a lease conveys an interest in property and that his non-payment of rent alone did not terminate the tenancy. *Id.* at 62–63. That court, however, concluded that the dispossession order of the magistrate court effected a forfeiture of the leasehold, dissolved the relation of landlord and tenant, and terminated the tenancy. *Id.* at 63. The Missouri court upheld Probst's conviction concluding that the jury could reasonably find that he committed the offense after March 10, 1975, and before he vacated the premises at a time when he no longer held an interest in the property. *Id.*

*Probst* is notably distinguishable from the present situation because the landlord there did not serve a notice of eviction and termination of the lease on Probst before filing suit for possession and past-due rent. Here, Mary mailed the eviction notice terminating the month-to-month lease to Huffman by certified mail. Huffman received the notice. The notice ordered Huffman to vacate the premises by September 30, 1993. Under *Thomas*, the lease terminated on that date, which was prior to the date on which Huffman filed his bankruptcy petition.

■ Under 11 U.S.C. § 365(c)(3) Huffman may not assume the nonresidential lease because it had been terminated pursuant to Missouri law before the bankruptcy petition was filed. The Court does not have the power to reinstate or resurrect the terminated lease, even if the lease is vital to an

effective reorganization. *See In re Bricker,* 43 B.R. 344, 348 (Bankr.D.Ariz.1984).

The Court concludes that Mary has a valid objection to Huffman's confirmation plan on the basis that the nonresidential lease terminated under Missouri law prior to the filing of the bankruptcy petition, which prevents Huffman from being able to assume the lease. The Court grants summary judgment in favor of Mary on this issue. The Court finds that at this point in time, Mary has presented sufficient evidence to conclude that the automatic stay must be lifted to enable her to proceed with her state court actions. The Court grants Mary's motion to lift the automatic stay, which is incorporated in the motion for summary judgment.

*B. Whether the confirmation plan contains an incorrect arrearage figure for unpaid rent due Mary?*

Mary contends that Huffman's confirmation plan erroneously provides for the payment of only $4080 for an arrearage of unpaid rent and that the correct amount of the arrearage is $7650. In his answer to Mary's objection to confirmation of the plan and complaint, Huffman admitted that he owes Mary $4050 as of September 30, 1993. In his answer to Mary's motion to lift the automatic stay, Huffman admitted that the agreed rental amount for the premises at 718 Michigan Street was $1800 per month. In her uncontroverted affidavit, Mary states that Huffman failed to pay rent on the property for the months of October and November.

The Court finds that the correct arrearage figure for unpaid rent is $7650 and grants summary judgment in Mary's favor on this issue.

*C. Whether Huffman's $60,000 counterclaim fails as a matter of law?*

Mary asserts that Huffman's $60,000 counterclaim for leasehold improvements he made to the premises at 718 Michigan Street must fail as a matter of law because the alleged oral contract for the sale of the property at 718 Michigan Street cannot be enforced pursuant to the Missouri Statute of Frauds, the applicable five-year Statute of Limitations bars his counterclaim, the alleged oral lease purchase contract lacks the essential ele-

ments required for an enforceable agreement, and the ownership of the leasehold improvements vested in her in the absence of a contrary agreement.

### 1. Statute of Frauds

■ The Missouri version of the Statute of Frauds is set forth in Mo.Rev.Stat. § 432.010 (1992). An oral contract to convey land falls squarely within the Statute of Frauds and will not be enforced at law. *Straatmann v. Straatmann,* 809 S.W.2d 95, 98 (Mo.App. 1991). However, in his counterclaim, Huffman states that the Phillips agreed to a lease purchase agreement of the real estate at 718 Michigan Street and on that assurance he occupied the premises and began remodeling the facility. Huffman's pleading states that the Phillips continued to promise him lease purchase documents, that he continued to improve the facility, and he invested $60,000 in leasehold improvements, the amount which he claims as damages. Huffman appears to base his counterclaim on promissory estoppel, which would remove the oral agreement from the proscription of the Statute of Frauds if the elements of that doctrine are satisfied. *Geisinger v. A & B Farms, Inc.,* 820 S.W.2d 96, 97–98 (Mo.App.1991).

■ There are a few Missouri cases that have allowed recovery pursuant to the promissory estoppel theory, but the Missouri courts are reluctant to abrogate the Statue of Frauds except in the most extraordinary situations. *Id.* at 98–99. "There is an understandable concern that to completely embrace the doctrine would be to totally abrogate the Statute. Consequently, the case law direction is to proceed with caution and to apply the doctrine only to avoid unjust results." *Id.* at 99.

■ "The essential elements of promissory estoppel are: 1) a promise; 2) detrimental reliance on the promise; 3) the promisor should have or did in fact clearly foresee the precise action which the promisee took in reliance; and 4) injustice can only be avoided by enforcement of the promise." *Id.* at 98.

In her affidavit, Mary states that she never offered Huffman a lease purchase arrangement on the property at either 714

Michigan Street or 718 Michigan Street, and has no knowledge that Victor made such an offer. Mary denies the promise, therefore, the Court must consider the extent to which Huffman's claimed reliance in adapting the building for a gymnasium-Karate-aerobics facility corroborates the existence of the alleged oral promise and the reasonableness of his action. *See id.* at 99.

In 1981, Huffman started his physical fitness, weight lifting and Karate business at 714 Michigan Street. Huffman made improvements to the property at 714 Michigan Street, which consisted of "[b]asically remodeling the whole place." The August 1981 written lease between Huffman and the Phillips provided that any additions or improvements to the building at 714 Michigan Street could not be removed without the Phillips' approval. In December 1983, Huffman and the Phillips executed a written lease for the properties at both 714 Michigan Street and 718 Michigan Street. That lease provides: "At the termination of the Lease, all improvements made to the premises by the Lessees shall become the property of the Lessors, including any additional plumbing fixtures, air conditioning and heating fixtures, partitions or other improvements." The property at 718 Michigan Street had previously housed a roller skating rink. The December 1983 lease provided that Huffman would use the property only for a gym, and contained specific provisions for renovations, changes and improvements to the property. Huffman began remodeling the real estate at 718 Michigan Street to adapt the building for his business. Huffman subsequently vacated the property at 714 Michigan Street in December 1984, and when he did the improvements remained in the premises.

Huffman states that he improved the property at 718 Michigan Street only after the Phillips agreed to a lease purchase arrangement. However, Huffman entered into a written lease agreement in December 1983 that included specific provisions for renovations, changes and improvements to the property. The lease provided that Huffman would use the property for a gym and for no other purpose. To adapt the facility at 718 Michigan Street from a roller skating rink to a gymnasium would require remodeling on Huffman's part. Further, the past conduct of the parties shows that Huffman made improvements to the Phillips' rental property that remained with the real estate when he subsequently vacated the premises. Here, there is no evidence to show that Huffman relied on the Phillips' assurances of a lease purchase agreement when he remodeled the property. Huffman's actions in improving the property are equally consistent with leasing the building for his ongoing business and the adaptation of the building for use as a gymnasium-Karate-aerobics training facility. *See Geisinger,* 820 S.W.2d at 99–100. The remodeling was "'neither extraordinary nor selfless, but reasonably necessary and incidental'" to the operation of Huffman's physical fitness, weight training and Karate business. *See Geisinger,* 820 S.W.2d at 100.

Huffman has failed to establish detrimental reliance on the alleged oral lease purchase contract, promissory estoppel does not bar application of the Statute of Frauds, and his counterclaim for damages based upon the alleged oral agreement for the sale of the real estate must fail on this ground.

### 2. Statute of Limitations

■ Mary asserts that the five-year Statute of Limitations for actions upon contracts, obligations or liabilities, express or implied, found in Mo.Rev.Stat. § 516.120 (1952) operates to bar Huffman's counterclaim. Mary contends that Huffman had only through 1992 to file a claim for breach of the alleged oral contract. In support of her contention, Mary relies on Huffman's deposition testimony in which he states that by 1986 or 1987 he realized the Phillips would not perform the lease purchase agreement.

■ "Ordinarily a statute of limitations begins to run from the date the cause of action accrues. . . . A cause of action accrues when the right to maintain a suit arises." *Brink v. Kansas City,* 358 Mo. 845, 217 S.W.2d 507, 509 (1949) (en banc). "[T]he statute of limitations begins to run once the fact of damage is capable of ascertainment, even though the amount of damage is not yet ascertainable." *Rose v. City of Riverside,* 827 S.W.2d 737, 738 (Mo.App.1992). "In an

action on *contract*, '[o]rdinarily a plaintiff's cause of action accrues upon a defendant's failure to do the thing at the time and in the manner contracted, and a statute of limitation begins to run when a suit may be maintained therefor.'" *Davis v. Laclede Gas Co.*, 603 S.W.2d 554, 555 (Mo.1980) (en banc) (quoting *Baron v. Kurn*, 349 Mo. 1202, 1213, 164 S.W.2d 310, 316 (1942)).

According to Mary and Huffman, no time period was established in which the Phillips were required to perform the alleged oral lease purchase agreement. Although Huffman stated that he realized in 1986 or 1987 that the Phillips were not going to perform under the alleged oral agreement, there were no time constraints on the Phillips and, theoretically, they could have performed under the alleged contract at any time. The evidence before the Court shows that Mary did not deny the existence of the alleged oral agreement until November 16, 1993, when she filed her reply to Huffman's answer to her first motion to lift the automatic stay. It appears to the Court that Huffman's cause of action for breach of contract accrued at that time. Huffman's counterclaim is not barred by the Statute of Limitations.

### 3. Lack of essential elements for an enforceable agreement

■■■ Mary asserts that Huffman's counterclaim also fails because it lacks the elements of proof required for the specific performance of an oral contract for the sale of land. The elements of proof necessary to invoke the equitable doctrine of specific performance of an oral contract for the sale of land as an exception to the application of the Statute of Frauds are set forth in *Straatmann v. Straatmann*, 809 S.W.2d 95, 98 (Mo.App.1991). It is not necessary for the Court to list all of the numerous elements here. The Court finds from the facts shown, particularly Huffman's admissions in his deposition, that the elements have not been satisfied. "The failure to adequately plead or prove any of the elements necessary to invoke the exception to the Statute of Frauds is fatal to the petition." *Kemp Constr. Co. v. Landmark Bancshares Corp.*, 784 S.W.2d 306, 308 (Mo.App.1990). "[I]f a contract is

insufficient to support a suit for specific performance because in contravention of the Statute of Frauds, a party thereto cannot recover damages for its breach." *Austin & Bass Builders, Inc. v. Lewis*, 359 S.W.2d 711, 715 (Mo.1962) (en banc). Huffman's counterclaim fails on this ground.

### 4. Ownership of the improvements vested in Mary

■■■ Finally, Mary contends that Huffman's counterclaim fails because in essence he seeks reimbursement for the improvements he made to the property at 718 Michigan Street and that pursuant to Missouri law the title to the improvements vested in her in the absence of a contrary agreement in the lease.

Huffman claims that the value of the leasehold improvements he made to the property at 718 Michigan Street is $60,000 and seeks judgment in that amount. The December 1983 lease executed by Huffman and the Phillips expressly provides that "At the termination of the Lease, all improvements made to the premises by [Huffman] shall become the property of the [Phillips]." Under the terms of that written agreement, if it is still in effect, which is still in question as noted previously, the improvements are Mary's property and Huffman is not entitled to compensation for their value.

■■■ There is no evidence that the terms of the alleged oral lease for the property at 718 Michigan Street provided for compensation to Huffman for the value of the leasehold improvements he made to the premises, or that he would own the improvements. "It is clear that, under Missouri law, the title to improvements made by a lessee vests in the lessor-title holder of the land at the time of their making in the absence of a contrary agreement in the lease." *G.W. Van Keppel Co. v. United States*, 321 F.Supp. 1183, 1186 (W.D.Mo.1970). "It is a well settled principle of property law that the tenant is not entitled to compensation for improvements made to the leasehold in the absence of an agreement that the landlord pay therefor." *State ex rel. State Highway Comm'n of Missouri v. St. Charles County Assoc.*, 698 S.W.2d 34, 36 (Mo.App.1985). Huffman is

not entitled to be compensated for the lease-hold improvements he made to the property at 718 Michigan Street. His counterclaim fails on this ground.

Huffman's $60,000 counterclaim fails as a matter of law and the Court grants summary judgment in favor of Mary on this issue.

### CONCLUSION

Based on the above discussion, Mary Phillips' motion for summary judgment is GRANTED and her motion to lift the automatic stay incorporated in the motion for summary judgment is GRANTED.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

SO ORDERED.